UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>　　　　　　Debtor in Foreign<br>　　　　　　Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>　　　　　　Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>HSBC SECURITIES SERVICES (LUXEMBOURG) S.A., et al.,<br><br>　　　　　　Defendants. | Adv. Pro. No. 10-03630 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF DEFENDANT PRIVATE-SPACE LTD. TO DISMISS
FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(b)(2)**

# TABLE OF CONTENTS

Page

Preliminary Statement …………………………………………………………….    1

Background and Procedural History ………………………………………………...    6

ARGUMENT

    A.    PSL's Alleged Contacts with the Forum Are
          Insufficient to Establish Jurisdiction …………………………………....    9

          1.  Alleged Foreseeability of Sentry's
             Investment in BLMIS Does Not
             Satisfy Minimum Contacts …………………………………………..    10

          2.  Alleged Use of Correspondent Account
             and Investment in U.S. Dollars Does
             Not Support Minimum Contacts …………………………………….    15

          3.  Citco Bank's Use of a Correspondent
             Account Is Irrelevant to the Minimum
             Contacts Analysis ……………………………………………………    21

    B.    The Exercise of Personal Jurisdiction over
          PSL Would Be Unreasonable …………………………………………....    21

Conclusion ……………………………………………………………………………    25

## TABLE OF AUTHORITIES

Page

Cases

*Asahi Metal Indus. Co. v. Superior Court*,
480 U.S. 102 (1987) ……………………………………………………… 12, 16-17, 22, 23

*Al Rushaid v. Pictet & Cie*,
68 N.E.3d 1 (N.Y. 2016) ………………………………………………… 20

*Benton v. Cameco Corp.*,
375 F.3d 1070 (10th Cir. 2004) ………………………………………… 24

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) ……………………………………………… 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ……………………………………………………… 9

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
[2014] UKPC 9 …………………………………………………………… 7, 9, 11, 13n.

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
141 S. Ct. 1017 (2021) ………………………………………………… 24

*Hau Yin To v. HSBC Holdings plc*,
2017 WL 816136 (S.D.N.Y. Mar. 1, 2017),
aff'd, 700 F. App'x 66 (2d Cir. 2017) …………………………………… 17-18, 20, 21

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ……………………………………………………… 10, 21

*Hill v. HSBC Bank plc*,
207 F.Supp. 3d 333 (S.D.N.Y. Sept. 15, 2016) ………………………… 18

*In re Fairfield Sentry Ltd.*,
2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)
("Fairfield I") ............................................................................... 3, 7, 8n.,
                                                                                9, 10

*In re Fairfield Sentry Ltd.*,
596 B.R. 275 (Bankr. S.D.N.Y. 2018)
("Fairfield II") ............................................................................ 7, 9, 13n.

*In re Fairfield Sentry Ltd.*,
2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020)
("Fairfield III") .......................................................................... 7, 11, 15

*In re Fairfield Sentry Ltd.*,
2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021)
("Fairfield IV") .......................................................................... 7, 8

*In re Fairfield Sentry Ltd.*,
458 B.R. 665 (S.D.N.Y. 2011) .......................................................... 23

*In re Mexican Gov't Bonds Antitrust Litig.*,
2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020) ...................................... 14

*In re Terrorist Attacks on September 11, 2001*,
714 F.3d 659 (2d Cir. 2013) ............................................................ 9

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011) ..................................................................... 14

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018) .................................................................. 18

*LaMonica v. CEVA Grp., PLC (In re CIL Ltd.)*
582 B.R. 46 (Bankr. S.D.N.Y. 2018) ................................................ 22

*Langenberg v. Sofair*,
2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006) ..................................... 9

*Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013) ........................................................... 20

*Manko Window Systems, Inc. v. Prestik*,
2017 WL 4355580 (D. Kan. Sept. 29, 2017) ....................................... 24

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
12 N.E.3d 456 (N.Y. 2014) ............................................................ 18, 23

*Official Committee of Unsecured Creditors of Arcapita
v. Bahrain Islamic Bank*,
549 B.R. 56 (Bankr. S.D.N.Y. 2016) .................................................. 19

*Picard v. Bureau of Labor Ins. (In re Securities Investor
Protection SIPA Liquidation Corp.)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ................................................ 14, 15n.

*Picard v. Fairfield Greenwich Grp. (In re Fairfield
Sentry, Ltd.)*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) ................................................ 11

*Porina v. Marward Shipping Co.*,
2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ...................................... 22

*Rocky Mountain Chocolate Factory v. Arellano*,
2017 WL 4697503 (D. Colo. Oct. 19, 2017) ........................................ 24

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
277 F. Supp. 3d 521 (S.D.N.Y. 2017) ................................................ 9

*Spiegel v. Schulmann*,
604 F.3d 72 (2d Cir. 2010) .............................................................. 25

*Tamam v. Fransabank SAL*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010) ................................................ 4, 18

*Universal Trading & Inv. Co. v. Tymoshenko*,
2012 WL 6186471 (S.D.N.Y. 2012) ................................................... 18, 19

*U.S. Bank National Association v. Bank of America N.A.*,
916 F.3d 143 (2d Cir. 2019) ............................................................ 11

*Walden v. Fiore*, 571 U.S. 277 (2014) .............................................. 4, 10, 12,
                                                                                      16, 21
*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016) ............................................................ 9

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ...................................................................... 21


<u>Rules</u>

Fed. R. Civ. P. 12(b)(2) ................................................................... 1

Defendant Private-Space Ltd. ("PSL"), by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss the Fourth Amended Complaint ("Complaint" or "Compl.") [Dkt. 167][1] filed by Plaintiffs as the Liquidators for Fairfield Sentry Ltd. ("Sentry") and Fairfield Sigma Ltd. ("Sigma," and together with Sentry, "Plaintiffs" or the "Funds") pursuant to Federal Rule of Civil Procedure 12(b)(2), made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## Preliminary Statement

Plaintiffs' sole remaining claim in the Action is for knowing receipt under British Virgin Islands ("BVI") law. Plaintiffs' claim asks this Court to effectively sit as a BVI Court of equity to adjudicate whether certain redemption payments paid by two BVI funds to HSBC Securities Services (Luxembourg) S.A. ("HSSL"), a Luxembourg financial institution, must be paid back. As to two of those redemption payments, HSSL was acting as custodian for PSL, a beneficial shareholder of shares in the Funds, and both HSSL and PSL are defendants in the Action. Plaintiffs have not established that the Court has personal jurisdiction over PSL with respect to such claims. Every purportedly material aspect of the conduct alleged is foreign:

- HSSL is a Luxembourg financial institution with its principal place of business and its place of incorporation both in Luxembourg. It is not alleged to, and does not, conduct any business in the United States.[2]

- Although the Complaint alleges (¶40), upon information and belief, that PSL is a Monaco corporation, PSL is, in fact, incorporated in the BVI and there are no

---

[1] All citations in this brief to "[Dkt. ___]" refer to the docket entry of that number in *Fairfield Sentry Limited, et al. v. HSBC Securities Services (Luxembourg) S.A., et al.*, Adv. Proc. No. 10-03630 (CGM) (Bankr. S.D.N.Y.) (the "Action"), and all citations in this brief to "[Consol. Dkt. _____]" refer to the docket entry of that number in *Fairfield Sentry Limited, et. al. v. Theodoor GGC Amsterdam, et. al.*, Adv. Proc. No. 10-03496 (CGM) (Bankr. S.D.N.Y.), the case with which the Action has been administratively consolidated.

[2] *See* the similar motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) that HSSL is also filing in the Action.

allegations in the Complaint that PSL has, or has ever had, any place of business in the United States.[3]

- The Funds are BVI hedge funds that are now in liquidation in their home jurisdiction of the BVI.

- HSSL received the redemption payments in bank accounts in London and Bermuda (Complaint, ¶51 and Exhs. A and B) that were sent by the Funds' Irish custodian, the Dublin branch of Citco Bank Nederland N.V. ("Citco Bank").

- HSSL was contractually due the redemption payments (including those it received on behalf of PSL) under the Funds' Articles of Association (the "Articles"), corporate documents governed by BVI law.

- The Articles provide a BVI contractual right to redeem shares in the Funds at that Fund's Net Asset Value ("NAV") when the shares were tendered to the Funds' Dutch administrator, Citco Fund Services (Europe) B.V. ("Citco Fund Services" or the "Citco Administrator").

- Citco Fund Services, which is alleged to have calculated the NAV (Compl., ¶137), is located in the Netherlands and processed redemption payments abroad.

- Plaintiffs allege no relevant activities by PSL (or its custodian, HSSL) in or directed at the United States.

When it has served their purposes, Plaintiffs have elsewhere affirmatively argued that their claims are "purely foreign." In July of this year, in connection with their pending appeal seeking reinstatement of certain claims previously dismissed by this Court, Plaintiffs told the District Court:

> *The redemption transfers at issue here were purely foreign.* The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). As Defendants concede (Omnibus Bankr. Dkt. 1457 at 19), *every relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States.*

---

[3]      In order to grant the present motion, the Court need not go beyond the lack of any such allegations in the Complaint, but it is, in fact, the case that PSL has never had a place of business in the United States. *See* Declaration of Lucio Bergamasco dated October 29, 2021 ("Bergamasco Decl."), ¶4 and Exh. A, being filed concurrently herewith by PSL in support of the present motion.

Pls'-Appellants' Opening Br. for Second-Round Appeal at 24 [Dkt. 440 in *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (S.D.N.Y. July 21, 2021) ("Pls.' Second-Round Appeal") (emphasis supplied).

This foreign claim was only filed in this Court due to a mistake of law made by Plaintiffs more than a decade ago. As this Court has found, Plaintiffs incorrectly construed the subscription agreement for the purchase of shares in the Funds as containing a New York forum selection clause for their claim against PSL. After this Court rejected that theory because the alleged knowing receipt is based solely on redemptions and does not arise out of the subscription agreement, *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments"), Plaintiffs were left grasping at straws to justify their continued pursuit of claims against PSL and hundreds of others in New York, a forum with no connection to the redemption transactions at issue. As this Court commented at argument:

> It just sounds like you litigated these issues or you should litigate them in the BVI. I don't understand why they're here. . . . [A]t some point you commenced these cases here. . . . And the question is why you didn't commence them in the BVI.

Tr. of July 27, 2016 Hr'g. at 12-14 [Consol. Dkt. 906].

To PSL's knowledge, Plaintiffs have advanced only two purported bases for personal jurisdiction in prior briefing to try to defeat the conclusion that this lawsuit does not belong here. Neither of those bases satisfies the U.S. Constitution's minimum contacts test for exercising jurisdiction over PSL.

*First*, Plaintiffs have argued that the minimum contacts test is satisfied because HSSL, and any beneficial shareholder for whom HSSL was acting (such as PSL), knew that the Funds were directly or indirectly investing the Funds' own money with Bernard L. Madoff Investment

Securities LLC ("BLMIS").  But this allegation is not relevant to Plaintiffs' actual claim for knowing receipt, which turns on the redemption payments *from the Funds* and their allegations of Citco Fund Services' bad faith calculation of those payments in the Netherlands.  *See* Compl., ¶¶17, 51, 137-67.  Plaintiffs' claims here are not about, and do not arise out of, any investment with BLMIS.  Even if the Funds' investments with Madoff were relevant, however, those investments – which were not made by PSL (whether or not acting through HSSL) – are not the sort of minimum contacts that would support personal jurisdiction over PSL.  As the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), establishes, the defendants' knowledge of the *plaintiffs'* contacts with the forum – here, the Funds' alleged contacts with BLMIS – are insufficient to establish personal jurisdiction.

*Second*, Plaintiffs allege in a footnote labeled "+" to an exhibit to the Complaint that redemption payments from Sentry (but not Sigma) were paid through a correspondent bank account in the United States.  *See* Compl., Ex. A n.+.[4]  But the mere use of a bank account at a U.S. financial institution to facilitate the receipt of dollar-denominated payments does not subject HSSL (and, by extension, PSL, the entity for which HSSL was acting with respect to one of the redemption payments listed on Exhibit A to the Complaint)[5] to personal jurisdiction in the United States.  *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." (citing cases)).  Foreign banks often maintain correspondent accounts denominated in dollars to facilitate the clearing of foreign dollar transactions.  These accounts are both common, because foreign banks cannot generally directly

---

[4]    Sigma investments were denominated in Euros, not U.S. dollars (Compl., ¶42).  Plaintiffs do not assert jurisdiction with respect to redemptions from Sigma based on the use of correspondent accounts.

[5]    *See* Bergamasco Decl., ¶3.

4

hold dollar-denominated accounts in their home countries, and essential to international commerce and to the economy, because they facilitate clearance of more than a trillion dollars in transactions each day. Making a payment in U.S. dollars, and facilitating that payment ministerially through a U.S. bank account, has been widely recognized in this Circuit not to give rise to personal jurisdiction; were it otherwise, virtually anyone in the world who does business in U.S. dollars would potentially be subject to personal jurisdiction in New York. *See infra* Section A.2 (citing cases establishing that use of a correspondent bank account alone does not infer personal jurisdiction). Moreover, Plaintiffs' claims do not arise out of the use of any correspondent account, even if it were a sufficiently purposeful contact.[6]

*Finally*, even if minimum contacts were satisfied, the exercise of jurisdiction would be unreasonable under the circumstances and for that reason impermissible. The majority (if not all) of relevant evidence is overseas in the BVI, the Netherlands, Luxembourg or Monaco (where certain of PSL's witnesses and documents are located). The United States has little to no interest in adjudicating this foreign law claim between foreign parties for the recovery of purely foreign payments under a foreign law contract. The federal court system only has subject matter jurisdiction over the Action because the claim is related to an ancillary Chapter 15 case, but that does not obviate the need to establish that the exercise of personal jurisdiction is reasonable here.

Even Plaintiffs' interest in litigating in this forum is very low. Plaintiffs have proffered no reason why the United States is more reasonable than their home jurisdiction of the BVI, which is also the jurisdiction in which PSL is incorporated (or even HSSL's home jurisdiction of

---

[6]        Nowhere does the Complaint identify any U.S. bank account (correspondent or otherwise) maintained by PSL itself. Nor could it as PSL has never had any such account (Bergamasco Decl., ¶4).

Luxembourg). Finally, the burden on PSL to litigating in New York is significant. The witnesses and evidence in this action are all overseas. *See* Bergamasco Decl., ¶4.

For these reasons, PSL should be dismissed for lack of personal jurisdiction.

### Background and Procedural History

These cases are ancillary to the foreign liquidation of the Funds in the BVI. The Funds were placed into liquidation in 2009 before the Commercial Division of the Eastern Caribbean High Court of Justice in the BVI after BLMIS's fraud was publicly revealed.[7] Between October 2009 and March 2010, Plaintiffs commenced actions in the BVI against a number of the Funds' alleged investors seeking restitution on the theory that the Funds mistakenly made redemption payments prior to and contemporaneously with BLMIS's collapse,[8] and have since brought more than 300 actions in the United States. Plaintiffs have repeatedly asserted that they brought those claims here on the belief – adjudicated to have been mistaken – that Defendants consented to personal jurisdiction in New York when they signed subscription agreements for the Funds.[9] The New York actions, including this Action against PSL, were consolidated before this Court after the Funds' foreign Liquidators' petitions for Chapter 15 recognition were granted. The cases shortly thereafter were stayed pending resolution of the BVI actions, which were poised to present potentially dispositive rulings on claims in the BVI and New York actions.

---

[7]     Compl., ¶¶28, 173-78.

[8]     *See* Declaration of William Hare in Support of Motion for Leave to Amend, ¶15 (the "Hare Decl.") [Consol. Dkt. 925].

[9]     *See* Tr. July 27, 2016 Hr'g. at 11-14 ("THE COURT: It just sounds like you litigated these issues or you should litigate them in the BVI. I don't understand why they're here. [Counsel for Plaintiffs]: Well, Judge, the issues are here because there's a forum selection clause, and because the cases are here. These defendants –") [Consol. Dkt. 906].

In 2014, the Privy Council, which is the court of last resort for the BVI, affirmed dismissal of the Liquidators' BVI law claims for restitution based on "mistaken payment." *Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9 ("Migani"). Starting in 2016, after receiving that unfavorable decision, Plaintiffs discontinued all remaining BVI actions,[10] and began prosecuting the New York actions under a new theory that the payment of the redemptions was not merely mistaken but the result of bad faith by the Funds' administrator, Citco Fund Services. Beginning in 2018, the Bankruptcy Court issued a series of decisions (*Fairfield I* through *Fairfield IV*)[11] rejecting the bulk of Plaintiffs' claims and personal jurisdiction arguments, though it did not ever fully resolve the issue of personal jurisdiction in individual cases.[12] Most relevant here, in August 2018, the Court issued *Fairfield I*, holding that the instant action did not arise with respect to the

---

[10]    *See* Hare Decl., ¶68. In the BVI courts, the Liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged miscalculation of their NAV. The Liquidators lost those claims at all levels of the BVI court system. *See Migani*, ¶23 (concluding the Liquidators' approach is "an impossible construction"). They also lost on their claim that redeeming investors did not give good consideration for the redemptions. *See generally id.*

[11]    *See Fairfield I*, 2018 WL 3756343; *In re Fairfield Sentry Ltd.*, 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); *In re Fairfield Sentry Ltd.*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"); *In re Fairfield Sentry*, 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) ("*Fairfield IV*").

[12]    PSL first moved to dismiss for lack of personal jurisdiction in 2017. *See, e.g.*, Consolidated Mem. of Law in Opp'n to Pls' Mot. for Leave to Amend and in Supp. of Defs' Mot. to Dismiss. [Dkt. 49 in the Action; Consol. Dkt. 960]; PSL's Supp. Mem. of Law in Opp'n to Pls' Mot. for Leave to Amend and in Supp. of Defs' Mot. to Dismiss [Dkt. 611 in the Action; Consol. Dkt. 1306].

Because of the stay and other procedural orders entered during this litigation by Judges Lifland and Bernstein, that was PSL's first opportunity to challenge personal jurisdiction. That 2017 motion has never been fully resolved, and since 2017 there have been a number of stipulated orders preserving the lack of personal jurisdiction defense. *See, e.g.*, Sept. 20, 2018 Order and Stipulation, ¶3 [Consol. Dkt. 1735]; April 15, 2019 Stipulated Order, ¶II. A [Dkt. 98 in the Action]; March 20, 2020 Scheduling Order, ¶4 [Consol. Dkt. 2926]; April 14, 2020 Scheduling Order, ¶5, [Consol. Dkt. 3028]; Feb. 26, 2021 Stipulated Order, ¶II.1 [Dkt. 130 in the Action].

subscription agreements and that the forum selection clause contained in the subscription agreements accordingly did not apply.[13]

The sole remaining claim in this action is a knowing receipt claim against HSSL, whose alleged knowledge Plaintiffs also claim should be attributable to any beneficial shareholder (such as PSL) for which HSSL was acting (Compl., ¶¶130-36). Knowing receipt is a specific type of equitable claim that permits a BVI court to find that the circumstances of a transfer of assets are such that although the recipient received legal title and possession, equitable title was retained by the transferor – rendering the transferee an involuntary trustee. To plead a claim for knowing receipt, "'the plaintiff must show, first, a disposal of his assets in breach of fiduciary duty; second, the beneficial receipt by the defendant of assets which are traceable as representing the assets of the plaintiff; and third, knowledge on the part of the defendant that the assets he received are traceable to a breach of fiduciary duty.'" *Fairfield IV*, 2021 WL 771677, at *3 (quoting *El Ajou v. Dollar Land Holdings Ltd.* [1994] 2 All E.R. 685, 700). Plaintiffs here are apparently pursuing this equitable relief with respect to twelve (12) redemptions allegedly paid to HSSL. *See* Compl., Exhs. A & B. As to two of those twelve (the May 16, 2007 Sentry payment listed on Ex. A to the Complaint and the April 17, 2007 Sigma payment listed on Ex. B), HSSL was acting as custodian for PSL, a beneficial shareholder. Bergamasco Decl., ¶3. The amount of those redemption payments was allegedly premised on the NAV of the Funds as calculated by the Funds and their administrative agent, Citco Fund Services. The redemption payments themselves were owed

---

[13]    *Fairfield I*, 2018 WL 3756343, at *12 ("[W]hile the Subscription Agreement governs subscriptions and refers to the Articles, the Articles govern redemptions and make no mention of the Subscription Agreement…Accordingly, the Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction . . . .").

8

under an enforceable contract upheld, notwithstanding BLMIS's fraud, both by the Privy Council

and this Court. *Migani*, ¶¶21-24 (appeal taken from the BVI); *Fairfield II*, 596 B.R. at 295-97.

## ARGUMENT

### A.    PSL's Alleged Contacts with the Forum Are Insufficient to Establish Jurisdiction.

This Court has previously held that Defendants in these actions (including PSL) did not

consent to personal jurisdiction in New York by subscribing to the Funds. *See Fairfield I*, 2018

WL 3756343, at *12. Plaintiffs do not allege any other form of consent to jurisdiction in the United

States and, accordingly, must identify some other basis to carry their "burden of establishing

jurisdiction over the defendant." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d

Cir. 2016) (quoting *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)). Plaintiffs

must make this showing with respect to "*each defendant*," *Langenberg v. Sofair*, 2006 WL

2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (emphasis in original), and "*each* claim asserted."

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 586 (S.D.N.Y.

2017) (quoting *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)) (emphasis

in original). At the motion to dismiss stage, Plaintiffs have the pleading burden, and "must make

a prima facie showing that jurisdiction exists" over PSL consistent with due process. *Charles

Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (internal quotation marks

omitted). Where, as here, Plaintiffs have not done so, their claims should be dismissed.

Plaintiffs do not allege that the Court has general jurisdiction over PSL, a BVI entity that

is not "at home" in the United States, and so Plaintiffs must plead facts supporting the exercise of

specific jurisdiction over PSL. *See Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014). To do

so, Plaintiffs must assert that (1) their claims arise out of the Defendants' sufficient "minimum

contacts with the relevant forum," and (2) "the exercise of jurisdiction is reasonable in the

circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)

9

(internal quotation marks omitted).   The minimum contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation," a relationship that "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden*, 571 U.S. at 284 (internal quotation marks omitted) (emphasis in original).  Plaintiffs have failed to meet this pleading burden.

### 1. Alleged Foreseeability of Sentry's Investment in BLMIS Does Not Satisfy Minimum Contacts.

Plaintiffs assert that the Court has jurisdiction over the beneficial shareholders  for which HSSL was acting (such as PSL) based on an allegation in the Complaint that they invested in the Funds while "knowing and intending that the Funds would invest substantially all of that money" in BLMIS (Compl., ¶20).  But that allegation is jurisdictionally irrelevant for at least three reasons.

*First*, the allegation that any beneficial shareholder for which HSSL was acting (such as PSL) knew that *subscription payments* into the Fairfield Funds may have been comingled with subscriptions from others, and the net surplus of those payments (in excess of redemption payments) would be invested by the Funds with BLMIS, does not give rise to this litigation and thus does not support jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").  Plaintiffs' claim is not predicated on whether or not the funds they seek to recover were ever placed with or controlled by BLMIS.  Nor does Plaintiffs' claim focus on PSL's decision to invest with the Funds as the basis for either liability or jurisdiction. *See Fairfield I*, 2018 WL 3756343, at *11-12 (finding subscription agreements irrelevant to claim because not based on subscription).  Plaintiffs' claim for knowing receipt relates to and arises out of the calculation of the NAV by the Funds' Dutch administrator, Citco Fund Services, and the foreign Funds' subsequent alleged disbursement of redemption payments abroad

10

on the basis of those calculations from their Irish bank accounts to bank accounts in London and

Bermuda. *See* Compl. ¶¶137, 160, 165, Ex. A.[14] HSSL presumably made its request for those

redemptions (including those redemptions for which it was acting for PSL as the beneficial

shareholder) by tendering shares to Citco Fund Services in the Netherlands, *see Migani*, ¶¶14-16;

the redemptions were processed by Citco Fund Services abroad, Pls.' Second-Round Appeal at 24;

and, in turn, the redemptions were funded from the Funds' bank accounts held at Citco Bank in

Ireland, *see Fairfield III*, 2020 WL 7345988 at *7 (finding all transfers paid by Citco Bank). There

is no dispute that every element of the transaction is "purely foreign." Pls.' Second Round-Appeal

at 24.

For the same reason, *U.S. Bank National Association v. Bank of America N.A.*, 916 F.3d

143 (2d Cir. 2019), which this Court applied to hold that it may exercise jurisdiction over Andrés

Piedrahita in its decision in the Fairfield Greenwich Group case, *Picard v. Fairfield Greenwich

Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (S.D.N.Y. Bankr. 2021) (Morris, C.J.)

("*FGG*"), does not establish jurisdiction here. *U.S. Bank* found specific jurisdiction in Indiana

over a defendant that made misrepresentations selling a bundle of mortgages because the

misrepresentations related specifically to a mortgage for an Indiana property and breach of a

promise to cure by taking action in Indiana. 916 F.3d at 151-52 (describing breach and obligation

to cure). In *FGG*, this Court found specific jurisdiction over Mr. Piedrahita because he spent a

"substantial amount of time" in New York and met with other "founding partners" of FGG and

Madoff in New York; these were the facts that gave rise to the claims against him for return of

management and performance fees and supported jurisdiction. 627 B.R. at 568. Unlike in those

cases, the claims against PSL are not based on any action taken by PSL or even directed by PSL

---

[14]    In the case of redemption payments intended for PSL, the bank account was in London
(Bergamasco Decl., ¶3).

(or HSSL acting on its behalf) in the United States.  Plaintiffs seek to recover against PSL, a BVI entity, because Citco Fund Services, which was the Funds' agent in the Netherlands, purportedly breached a duty it owed to the Funds in the BVI when it paid money to PSL's custodian HSSL, a Luxembourg financial institution, and because HSSL allegedly knew of the breach (knowledge which the Complaint alleges (¶¶130-36) should be attributable to PSL).[15]  None of those facts have anything to do with the United States.

*Second*, mere knowledge that Sentry would invest money it raised in the BVI with BLMIS in New York is insufficient as a matter of law to support jurisdiction.  The Supreme Court's opinion in *Walden* is dispositive on this point.  In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport.  571 U.S. at 279-81.  The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada.  *Id.* at 289.  As the Supreme Court explained, the foreseeability of plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."  *Id.*  The Supreme Court instead has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."  *Id.* at 284; *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) ("The substantial connection . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the internal forum State*.") (internal quotation marks omitted) (emphasis in original).

---

[15]    The Complaint makes no allegation whatsoever that PSL itself had any such alleged knowledge of its own.

Even if true, the assertion that HSSL and the beneficial shareholders for which HSSL was acting (such as PSL) knew the Funds would invest with BLMIS falls far short even of the facts of *Walden*, and under the circumstances of this case, it is logical that such an allegation is insufficient to haul PSL into this Court. Once HSSL transferred subscription money to the Funds (including money transferred on behalf of PSL), the money was no longer HSSL's or PSL's because HSSL entered into a contract to exchange it for shares.[16] While some of the money invested in the Funds was transferred to Madoff, and some of the redemption payments may have been funded by transfers from BLMIS, that was not universally or even typically the case: As Plaintiffs allege, the Funds netted subscriptions against redemptions, and accordingly, often funded redemption payments with money that came from new investments. Thus, that money was never placed with BLMIS in New York at all. *See* Compl. ¶47 (alleging that subscription money was used to pay redemptions as a "shortcut").[17] The law does not support Plaintiffs' expansive view that an investment company can sue its investors in any jurisdiction where that investment company itself decides to make investments.

*Third*, Plaintiffs' suggestion that money placed with the Funds may have – but was not necessarily – invested by the Funds in BLMIS is not a basis for asserting personal jurisdiction over investors in the Funds; it is nothing more than the type of "stream of commerce" theory of personal

---

[16]    *See Fairfield II*, 596 B.R. at 288 ("In rejecting Sentry's arguments relating to the Certification Issue, the Privy Council considered the provisions of Articles 9, 10 and 11, and concluded that the NAV had to be definitively determined *at the time* of the subscription or redemption; otherwise, the scheme was 'unworkable.'"); *see also Migani*, ¶10 ("The Subscription Agreement binds the subscriber to his subscription and to the terms of the Fund Documents.").

[17]    Sigma itself never invested with BLMIS. Sigma was instead a shareholder in Sentry that received redemptions from Sentry indistinguishable from the redemptions received by HSSL or PSL. The Complaint also alleges that Sigma used new subscriptions to pay new redemption requests, meaning that HSSL's Sigma subscriptions (including ones made on behalf of PSL as beneficial shareholder) (paid in *Euros*) may never have even made it to Sentry in the BVI, let alone to BLMIS in New York. *See* Compl., ¶¶42, 47.

13

jurisdiction rejected by the Supreme Court. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 886 (2011) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum," but rather the defendant must "engage[] in conduct purposefully directed at [the forum].");[18] *In re Mexican Gov't Bonds Antitrust Litig.*, 2020 WL 7046837, at *3-4 (S.D.N.Y. Nov. 30, 2020) (holding neither an attempt to profit from conduct underlying claim nor foreseeability of a harm in forum were sufficient to establish jurisdiction in absence of a defendant's contact with forum).

Notably, this case is very different from *Picard v. Bureau of Labor Insurance (In re Securities Investor Protection SIPA Liquidation Corp.)*, 480 B.R. 501, 516-19 (Bankr. S.D.N.Y. 2012) ("*BLI*") in which Judge Lifland held that a defendant's investment with Sentry was sufficient to establish personal jurisdiction *with respect to claims arising from the liquidation of BLMIS*. In that case, the allegations concerned transfers by BLMIS from New York, and the court held that the decision to invest in a fund that would ultimately invest with Madoff gave rise to personal jurisdiction with respect to claims arising from that *Madoff* investment. *Id.* But Plaintiffs' claims in this case are not brought by the Madoff Trustee and do not arise from the *Madoff* investment; they arise from the redemption payments made by the Funds from the BVI to foreign defendants. Even if it was foreseeable to PSL that investing with the Funds would give rise to personal jurisdiction in New York with respect to claims arising from a New York investment, it is not

---

[18]    In *McIntyre*, a worker at a scrap metal business in New Jersey hurt himself while using one of the U.K. defendant's machines and sued in New Jersey. 564 U.S. at 878. The Court held that personal jurisdiction in New Jersey was lacking because the defendant did not purposefully direct its conduct at the forum. *Id.* This was so despite there being evidence that it was a high likelihood that the machines would have been used in New Jersey. *See id.* at 895 (Ginsburg, J., dissenting). Even if it were foreseeable that investments would be made in New York-based BLMIS, PSL did not purposely direct its conduct to New York – but instead to the BVI.

credible that PSL would have understood itself to be signing up to U.S. jurisdiction with respect to claims of the Funds themselves (except with respect to claims arising out of the subscription agreements, which this Court has held was not the case here).[19]

### 2. Alleged Use of Correspondent Account and Investment in U.S. Dollars Does Not Support Minimum Contacts.

Plaintiffs also claim that minimum contacts are established based on an inference, alleged in a footnote to Exhibit A to the Complaint, that the redemption payments made by Sentry – but *not Sigma* – "went through" a correspondent bank account in the United States on their way to HSSL in Luxembourg (and eventually to the beneficial shareholder PSL, a BVI entity). This argument does not support the exercise of personal jurisdiction.

Foreign financial institutions often use correspondent accounts ministerially to receive U.S. dollar-denominated payments. Here, the redemption payments from Sentry allegedly traveled from Sentry in the BVI by way of its Irish custodian Citco Bank to a London bank designated by a Luxembourg entity, HSSL (Compl., Exh. A; Bergamasco Decl., ¶3), by way of a U.S.-based correspondent account to facilitate clearing the U.S. dollar transactions. *Fairfield III*, 2020 WL 7345988, at *6 ("All of the redemption payments were made by the Dublin Branch of Citco Bank where the Funds maintained accounts.").

As an initial matter, Plaintiffs allege the involvement of correspondent accounts solely with respect to Sentry, not Sigma. *Compare* Compl., Ex. A n.+ (arguing involvement of correspondent accounts for Sentry transfers), *with* Compl., Ex. B (containing no such argument). This is because the payment allegedly made to HSSL by Sigma (as to which PSL was the beneficial shareholder)[20]

---

[19]    In any event, holding in *BLI* is in doubt following the subsequent Supreme Court decision in *Walden*. The court in *BLI* relied on BLI's alleged knowledge of the feeder fund's investments in BLMIS, 480 B.R. at 517, which is the type of foreseeability argument rejected in *Walden, see supra* at 13.

[20]    Bergamasco Decl., ¶3.

was paid in Euros (Compl., ¶42) allegedly directly into a bank account held in London (*Id.,* Ex. B). Accordingly, with respect to the claim of Sigma, there is no U.S. contact whatsoever alleged and that claim (covering the transfer listed in Exhibit B to the Complaint which was for PLS's redemption of its Sigma shares) should be dismissed regardless of this Court's ruling with respect to the use of correspondent accounts. With respect to Sentry, the claims about the use of correspondent accounts fail for the reasons that follow.

Plaintiffs' allegations concerning HSSL's receipt of redemption payments (including receipt on behalf of PSL as beneficial shareholder) are allegations of *passive* conduct – *e.g.,* that HSSL (and, by extension, PSL) received money that was transmitted by someone else, namely, the Funds themselves. But the Funds' own conduct in sending money *to* HSSL is not sufficient to establish personal jurisdiction over HSSL, let alone PSL.[21] *See Walden,* 571 U.S. at 289. The allegation that, from Luxembourg, HSSL purchased shares in BVI funds (including purchases made on behalf of PSL, a BVI entity) that, in turn, invested in BLMIS (Compl., ¶¶33, 130) is irrelevant for the reasons set forth above in Section A.1, insofar as it is insufficient under *Walden. See supra* at 13 (discussing *Walden*); *Walden,* 571 U.S. at 284 (The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."); *see also Asahi,* 480 U.S. at 112 (1987) ("The substantial connection . . . between the defendant and the

---

[21]    There is no allegation in the Complaint that PSL itself made any direction as to what bank account to use for redemption payments, and the Court should disregard Plaintiffs' generic, unsupported, and conclusory allegations, made "upon information and belief" that Beneficial Shareholders "maintain[ed] bank accounts in the United States" and designated those accounts "to receive their Redemption Payments from the Funds" (Compl., ¶20). That generalized designation allegation is expressly contradicted by the identities of the specific non-U.S. banks that the Complaint itself specifically pleads were actually so designated by HSSL (*see* Compl., ¶51 and Exhs. A and B), in particular, the London bank to which the redemption payments for PSL's shares were sent. Bergamasco Decl., ¶3. Moreover, PSL has never, in fact, had any U.S. bank account (*Id.,* ¶4).

16

forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*.") (internal quotation marks omitted) (emphasis in original). As for the other allegation that HSSL received redemption payments (including redemption payments for the benefit of PSL) in bank accounts in the United States (Compl., ¶20), that allegation, taken alone, does not establish minimum contacts with the forum.

Receiving payments at a U.S.-based correspondent bank account is insufficient to establish personal jurisdiction in this case. The alleged incidental use of a bank account in the United States to facilitate U.S. dollar-denominated payments to settle a foreign securities transaction – here, the redemption of shares in a BVI company by its Luxembourg shareholder (including when it acted on behalf of PSL, a BVI beneficial shareholder) – does not, as a matter of controlling law, give rise to personal jurisdiction. Again, the redemption payments at issue here were not directed by either HSSL or PSL, and there is no allegation that PSL specifically took advantage of the U.S. financial system as the object of any purposeful conduct. Rather, HSSL is alleged to have received payments (including two redemption payments on behalf of PSL) made from one foreign party to another, facilitated through foreign originating and receiving banks, and made under a foreign contract that effectuated the redemption of securities issued by a foreign investment company.

To the extent the payments transited through a U.S.-based account during the course of that transaction, it was solely for the purpose of facilitating that transfer in U.S. dollars under a foreign contract. The mere use of a correspondent account by a foreign bank to clear transfers for a foreign contract denominated in U.S. dollars does not, as a matter of law, confer jurisdiction over the foreign bank (HSSL), let alone the foreign bank's foreign customer (PSL). *See Hau Yin To v. HSBC Holdings, PLC*, 2017 WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017), *aff'd,* 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged

connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank plc*, 207 F.Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract" . . . insufficient to 'project' the Foreign Defendants into New York" and "not amount[ing] to 'purposeful availment' of the laws of [the forum]"); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." (citing cases)).

Hundreds of thousands of foreign dollar transactions valued at over $1.5 trillion are cleared in New York each day. *See generally Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) ("In New York each day, on average, about 440,000 of these transfers [Clearing House Interbank Payments System (CHIPS) – the system used for most large banking transactions], occur, in dollar amounts totaling about $1.5 trillion."). Were the incidental use of U.S.-based accounts sufficient to confer personal jurisdiction over foreign entities, New York would become a forum for any foreign commercial dispute, contrary to federal and state policy, merely because global transactions are frequently cleared in U.S. dollars. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *see also Universal Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on . . . a correspondent bank account.") (internal quotation marks omitted).

Plaintiffs have cited *Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56 (Bankr. S.D.N.Y. 2016), in prior briefing to argue that using a correspondent account in New York is sufficient to establish personal jurisdiction.[22] But *Arcapita* is inapposite because the contacts there were plainly more purposeful than those alleged here. *Id.* at 70. *Arcapita* concerned an investment scheme in which the debtor entered into placement agreements with defendant banks that allowed the banks to propose investments by sending offers to Arcapita specifying the currency and bank account for Arcapita to transfer funds. Arcapita accepted three investment offers designated by the banks in U.S. dollars payable to correspondent accounts in New York. The bankruptcy court found it had personal jurisdiction over the banks because the banks purposefully selected U.S. dollars and New York accounts, when under the placement agreements the banks could have selected any currency and any account anywhere in the world. *Id.* at 69-70 (noting bank could have selected accounts "anywhere . . . in the United States" and chose New York).

Unlike in *Arcapita*, here PSL did not select U.S. dollars as the base currency for its investments with Sentry; Sentry chose the base currency. *See* Hare Decl., Exh. F at 1, 9 [Consol. Dkt. 925-26] (Sentry Articles, Arts. 1, 10(1)(c), defining "Base Currency" as "the currency of the United States of America" and stating "payment shall be made to the Applicant in the Base Currency in respect of the redemption or purchase of Shares"). HSSL's purported use of a correspondent account in New York (including with respect to redemption payments as to which it was acting for PSL) would thus have been necessitated by the BVI-based Sentry's choice of U.S. dollars and incidental to its foreign law contract with Sentry. This is not a purposeful U.S. contact by HSSL, let alone PSL. *See Tymoshenko*, 2012 WL 6186471, at *3. PSL's only purposeful

---

[22] *See* Foreign Representatives' Opp. to Defendants' Mot. to Dismiss at 11-18 [Consol. Dkt. 1336].

actions were its decision to invest in a BVI investment company and its request to redeem funds from that company.  PSL's receipt of payments merely settled a securities transaction between HSSL (acting on behalf of PSL) and the Funds.

Plaintiffs have also relied on *Licci v. Lebanese Canadian. Bank, SAL*, 732 F.3d 161 (2d Cir. 2013), to argue that use of a correspondent account in the United States is itself sufficient to establish specific jurisdiction over HSSL (and, by extension, PSL), but there the Second Circuit concluded that wire transfers from a correspondent bank account could establish personal jurisdiction when the transfers are part of the "principal wrong" alleged. *Id.* at 170-71.  The principal wrong in that case was the intentional use of a correspondent account to fund terrorist activity in violation of statutory duties in antiterrorism laws. *Id.* at 171.

Here, there is no allegation that the transmission of funds through HSSL's purported correspondent account is the principal wrong that Plaintiffs are suing on.  *Plaintiffs allege no fraudulent scheme or breach of duty by HSSL or PSL at all*.  Plaintiffs bring a narrow, equitable claim to unwind a payment by the Funds' agent, Citco Fund Services, in breach of a duty that the agent may have owed to the Funds.  If money passed through a correspondent account in the United States, that is entirely incidental to Plaintiffs' claims about a breach by Citco Fund Services and accordingly is insufficient to establish jurisdiction. *See Hau Yin To*, 2017 WL 816136, at *7 n.6 (finding use of correspondent account incidental).  Similarly, Plaintiffs have relied on *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1 (N.Y. 2016), where the plaintiff alleged that the defendant knowingly used a correspondent account to launder money and pay bribes. *Id.* at 10.  But *Al Rushaid* simply reaffirms the holding of *Licci* that use of a correspondent account that is "integral" to an illegal scheme is sufficient to establish jurisdiction over a claim arising out of the scheme.  HSSL's alleged use of a correspondent account (including for redemptions being made on behalf of PSL)

is entirely incidental, not integral, to Plaintiffs' claim and thus is not sufficient. *See Hau Yin To*,
2017 WL 816137, at *7 n.6 (distinguishing *Al Rushaid* as limited to use integral to fraud).[23]

### 3. Citco Bank's Use of a Correspondent Account Is Irrelevant to the Minimum Contacts Analysis.

Plaintiffs advance a related argument that the Funds' own custodian, Citco Bank, based in
Ireland, used a correspondent account to transfer the redemption payments to HSSL. *See* Compl.,
Ex. A. n.+.  There is no allegation that either HSSL or PSL was involved in the selection of this
correspondent account by the Funds' agent.  The fact that Citco Bank unilaterally chose to use a
correspondent account is irrelevant to whether the Court may exercise jurisdiction over *PSL*
because jurisdiction must be based on the *defendant's* contacts with the forum, not plaintiff's (or
plaintiff's own agent). *See Walden*, 571 U.S. at 284; *Helicopteros Nacionales de Colombia, S.A.
v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is
not an appropriate consideration when determining whether a defendant has sufficient contacts
with a forum State to justify an assertion of jurisdiction.").

### B.    The Exercise of Personal Jurisdiction over PSL Would Be Unreasonable.

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to
be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297
(1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that allows
potential defendants to structure their primary conduct with some minimum assurance as to where
that conduct will and will not render them liable to suit." (citation omitted)).  Courts apply a
"sliding scale" in assessing whether jurisdiction is consistent with due process: "the weaker the
plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of

---

[23]    The fact that Sigma payments did not go through a correspondent account in New York underscores
its happenstance nature and lack of materiality to the redemption payments.

unreasonableness to defeat jurisdiction." *LaMonica v. CEVA Grp., PLC (In re CIL Ltd.)*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (internal quotation marks and citation omitted); *see also Porina v. Marward Shipping Co.*, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show that jurisdiction over the defendant is proper."). In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must consider the burden on defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi*, 480 U.S. at 113.

Plaintiffs here seek to rely on the most incidental of contacts to establish jurisdiction. *See supra*, Pt. A. Even if those contacts are deemed sufficient, which they should not be, Plaintiffs must therefore make a *stronger showing* that the exercise of jurisdiction would be reasonable, but each of the factors that the Court must assess in weighing reasonableness weigh *against* jurisdiction: The U.S. has a minimal (if any) interest in this litigation, the burden on PSL in litigating here is high, and Plaintiffs cannot show that New York is more reasonable than other available fora, including the BVI, where both the Funds and PSL are at home and where a court is administrating the Funds' main bankruptcy proceeding (or even in Luxembourg, where HSSL is at home). Because the alleged contacts are insignificant and all of the reasonableness factors weigh against jurisdiction, the Court should dismiss the one remaining claim against PSL.

*First*, the United States' interest in adjudicating this dispute is minimal at best. The dispute is between foreign parties arising under foreign law pursuant to a foreign contract for the return of cash sent between two foreign countries in a purely foreign transaction. The case was only brought before this Court because Plaintiffs mistakenly believed that Defendants (including PSL) had consented to jurisdiction – a position already rejected by the Court. Had Plaintiffs not filed a

petition for Chapter 15 recognition, there would be no subject matter jurisdiction in federal court over this claim at all for what is essentially a private dispute between foreign parties. *In re Fairfield Sentry Ltd.*, 458 B.R. 665, 685 (S.D.N.Y. 2011) (Preska, J.) ("[T]hese claims are disputes between two private parties that have existed for centuries and are 'made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.'" (citation omitted)). The claim for knowing receipt is itself non-core, and there are no alleged debtor assets in the United States. *Id.* at 682 ("Here, there are no assets in the United States. The Plaintiffs' actions seek assets, so their location is relevant. Plaintiffs do not seek discovery or stays of proceedings in the United States. Thus, *the ancillary character of the Chapter 15 cases here is at a low ebb—it is certainly not within the core jurisdiction of the bankruptcy court to aid the BVI courts in these cases because there are no assets sought in the United States.*" (emphasis supplied)). The Supreme Court has cautioned against finding jurisdiction over such a claim between *foreign* parties arising under *foreign* law. *Asahi*, 480 U.S. at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.") (internal quotation marks omitted); *see also Mashreqbank PSC*, 12 N.E.3d at 459-60 (noting minimal interest of New York in pursuing every purported fraud that passes through correspondent accounts).

*Second*, defending Plaintiffs' claim before this Court would impose substantial burdens on PSL, a BVI corporation with no physical presence in the United States and no records, files or witnesses with information about the litigation located here. *See Bermasco Decl.,* ¶4.

*Third*, Plaintiffs have not demonstrated that it is more reasonable for them to litigate their claims against PSL in New York rather than in the BVI, where both the Funds and PSL are at home and where a court is administrating the Funds' main bankruptcy proceeding (or even in Luxembourg, where HSSL is at home). Indeed, Plaintiffs initially chose the BVI as the preferable

23

and most convenient forum to pursue related claims. Only upon losing at the highest level in the BVI court system did Plaintiffs then discontinue their suits in that forum, and continue them here under new legal theories in what they hoped would be a more advantageous forum. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (noting that jurisdiction had been found improper where "the plaintiffs were engaged in forum-shopping"). Plaintiffs' maneuvering demonstrates a lack of interest in obtaining convenient and effective relief and undercuts any claim that the assertion of personal jurisdiction over PSL in this Court would be reasonable.

Courts have held that defendants should be dismissed in circumstances like this, where even assuming defendants' contacts with the forum only "'barely satisf[y] the minimum contacts standard,'" – and PSL's do not – "a majority of the reasonableness factors weigh against the exercise of jurisdiction." *Rocky Mountain Chocolate Factory v. Arellano*, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017) (citation omitted); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004) (The defendant's "contacts with [the forum] were quite limited, barely satisfying the minimum contacts standard. As a result, [the defendant] need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry. . . Because the majority of the . . . reasonableness factors weigh in [the defendant's] favor, . . . exercise of personal jurisdiction over [the defendant] . . . would offend traditional notions of fair play and substantial justice."); *Manko Window Systems, Inc. v. Prestik*, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) ("[B]ecause [the defendant's] contacts with [the forum] are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction, the Court grants Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)."). The same result is warranted here.

## **Conclusion**

Because the Complaint fails to provide "any basis to demonstrate that [this Court] would

have . . . personal jurisdiction" over PSL, the Court should grant the instant motion to dismiss

PSL from the Action. *See Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010).


Dated: October 29, 2021             Respectfully submitted,
      New York, NY

GILMARTIN, POSTER & SHAFTO LLP

By: /s/ Michael C. Lambert
     Michael C. Lambert
845 Third Avenue, 17th Floor
New York, New York 10022
(212) 425-3220
mclambert@lawpost-nyc.com

*Attorneys for Defendant Private-Space Ltd.*