UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>       Debtor in Foreign<br>       Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN<br>LIQUIDATION), et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>       Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN<br>LIQUIDATION), et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>HSBC SECURITIES SERVICES<br>(LUXEMBOURG) S.A., et al.,<br><br>       Defendants. | Adv. Pro. No. 10-03630 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF
HSBC SECURITIES SERVICES (LUXEMBOURG) S.A.'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................ 5

ARGUMENT .................................................................................................................. 8

    I.    HSSL's Alleged Contacts with the Forum Are Insufficient To Establish Jurisdiction ....... 8

        A.   Alleged Foreseeability of Sentry's Investment in BLMIS Does Not Satisfy Minimum Contacts........................................................................................................... 9

        B.   Alleged Use of Correspondent Accounts and Investment in U.S. Dollars Does Not Support Minimum Contacts ................................................................................ 14

        C.   Citco Bank's Use of a Correspondent Account Is Irrelevant to the Minimum Contacts Analysis............................................................................................................ 19

    II.   The Exercise of Personal Jurisdiction Over HSSL Would Be Unreasonable................... 20

CONCLUSION............................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Al Rushaid v. Pictet & Cie*,
    68 N.E.3d 1 (N.Y. 2016)......................................................................................................19

*Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*,
    480 U.S. 102 (1987)................................................................................................ *passim*

*Benton v. Cameco Corp.*,
    375 F.3d 1070 (10th Cir. 2004) ........................................................................................23

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018)............................................................................................ 8-9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)............................................................................................................9

*Fairfield Sentry Ltd. (in Liquidation) v. Migani*,
    [2014] UKPC 9 ....................................................................................................... *passim*

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
    141 S. Ct. 1017 (2021)................................................................................................. 22-23

*Hau Yin To v. HSBC Holdings, PLC*,
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) .........16, 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)....................................................................................................10, 20

*Hill v. HSBC Bank plc*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016)................................................................................16

*In re CIL Limited*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018)..................................................................................20

*In re Fairfield Sentry*,
    2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) ......................................................... 7-8

*In re Fairfield Sentry Ltd.*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ....................................................... *passim*

*In re Fairfield Sentry Ltd.*,
2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020)....................................................7, 10, 15

*In re Fairfield Sentry Ltd.*,
458 B.R. 665 (S.D.N.Y. 2011)...............................................................................................21

*In re Fairfield Sentry Ltd.*,
596 B.R. 275 (Bankr. S.D.N.Y. 2018) ........................................................................ 7-8, 12

*In re Fairfield Sentry Ltd.*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) (Morris, C.J.) ...........................................................11

*In re Mexican Gov't Bonds Antitrust Litig.*,
2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020)......................................................................13

*In re Terrorist Attacks on September 11, 2001*,
714 F.3d 659 (2d Cir. 2013)....................................................................................................9

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011)..............................................................................................................13

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018) ..........................................................................................................17

*Langenberg v. Sofair*,
2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006)........................................................................8

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)............................................................................................ 18-19

*Manko Window Sys., Inc. v. Prestik*,
2017 WL 4355580 (D. Kan. Sept. 29, 2017) ........................................................................23

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
12 N.E.3d 456 (N.Y. 2014)..............................................................................................17, 22

*Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016) .......................................................................................... 17-18

*Picard v. Bureau of Labor Insurance (In re Securities Investor Protection Corp.)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Lifland, J.)........................................................ 13-14

*Porina v. Marward Shipping Co.*,
2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ......................................................................20

*Rocky Mountain Chocolate Factory v. Arellano,*
  2017 WL 4697503 (D. Colo. Oct. 19, 2017) ........................................................23

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG,*
  277 F. Supp. 3d 521 (S.D.N.Y. 2017)......................................................................8

*Spiegel v. Schulman,*
  604 F.3d 72 (2d Cir. 2010)....................................................................................24

*Tamam v. Fransabank Sal,*
  677 F. Supp. 2d 720 (S.D.N.Y. 2010).............................................................4, 17

*U.S. Bank National Association v. Bank of America N.A.,*
  916 F.3d 143 (2d Cir. 2019)............................................................................ 10-11

*Universal Trading & Inv. Co., Inc. v. Tymoshenko,*
  2012 WL 6186471 (S.D.N.Y. 2012)................................................................ 17-18

*Walden v. Fiore,*
  571 U.S. 277 (2014).................................................................................... *passim*

*Waldman v. Palestine Liberation Org.,*
  835 F.3d 317 (2d Cir. 2016)....................................................................................8

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980)...............................................................................................20

## Other Authorities

Fed. R. Bankr. P. 7012................................................................................................1

Fed. R. Civ. P. 2(b)(2)...............................................................................................1

Defendant HSBC Securities Services (Luxembourg) S.A. ("HSSL"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss the Fourth Amended Complaint ("Complaint," Dkt. 167) filed by Kenneth M. Krys and Greig Mitchell (the "Liquidators"), solely in their capacities as the liquidators for Fairfield Sentry Ltd. ("Sentry") and Fairfield Sigma Ltd. ("Sigma," and together with Sentry, the "Funds," and the Funds together with the Liquidators, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(2), made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

Plaintiffs' sole remaining claim is for knowing receipt under British Virgin Islands ("BVI") law. Plaintiffs' knowing receipt claim asks this Court to effectively sit as a BVI court of equity to adjudicate whether redemption payments paid by two BVI funds to HSSL, a Luxembourg financial institution, must be paid back. Plaintiffs have not established that the Court has personal jurisdiction over HSSL with respect to such claims. Every purportedly material aspect of the conduct alleged is foreign:

- HSSL is a Luxembourg financial institution with both its principal place of business and its place of incorporation in Luxembourg. It is not alleged to, and does not, conduct any business in the United States.

- The Funds are BVI hedge funds that are now in liquidation in their home jurisdiction of the BVI.

- The redemption payments to HSSL were not paid to accounts in New York; they were paid to bank accounts in London and Bermuda that were sent by the Funds' Irish custodian, the Dublin branch of Citco Bank Nederland N.V. ("Citco Bank").

- HSSL was contractually due the redemption under the Funds' Articles of Association the "Articles"), corporate documents governed by BVI law.

- The Articles provide a BVI contractual right to redeem shares in the Funds at that Fund's Net Asset Value ("NAV") when the shares were tendered to the Fund's Dutch administrator, Citco Fund Services (Europe) B.V. ("Citco Fund Services" or the "Citco Administrator").

- Citco Fund Services, which is alleged to have calculated the NAV, is located in the Netherlands and processed redemption requests abroad.

- Plaintiffs allege no relevant activities by HSSL in or directed at the United States.

Indeed, when it has served their purposes, Plaintiffs have elsewhere affirmatively argued that their claims are "purely foreign." In July of this year, in connection with their pending appeal seeking reinstatement of certain dismissed claims, Plaintiffs told the District Court:

> **The redemption transfers at issue here were purely foreign**. The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). As Defendants concede (Omnibus Bankr. Dkt. 1457 at 19), **every relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States**.

Pls.'-Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (S.D.N.Y. July 21, 2021) (Dkt. 440) ("Pls.' Second-Round Appeal") (emphasis supplied).

This foreign claim was only filed in this Court due to a mistake of law made by Plaintiffs more than a decade ago. As this Court found, Plaintiffs incorrectly construed the subscription agreement for the purchase of shares in the Funds as containing a New York forum selection clause for their claim against HSSL. After this Court rejected that theory because the alleged knowing receipt is based solely on redemptions and does not arise out of the subscription agreement, *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments"), Plaintiffs were left grasping at straws to justify their continued pursuit of claims against HSSL and hundreds of others in New York, a forum with no connection to the redemption transactions at issue. As this Court commented at argument:

2

> It just sounds like you litigated these issues or you should litigate
> them in the BVI. I don't understand why they're here. . . . [A]t some
> point you commenced these cases here. . . . And the question is why
> you didn't commence them in the BVI.

July 27, 2016 Hr'g. Tr. at 12:3-14:22 (Dkt. 906).[1]

To HSSL's knowledge, Plaintiffs have advanced only two purported bases for personal jurisdiction in prior briefing to try to defeat the conclusion that this lawsuit does not belong here. Neither of those bases satisfies the U.S. Constitution's minimum contacts test for exercising jurisdiction over HSSL.

*First*, Plaintiffs have argued that the minimum contacts test is satisfied because HSSL knew that the Funds were directly or indirectly investing the Funds' own money with Bernard L. Madoff Investment Securities LLC ("<u>BLMIS</u>"). But this allegation is not relevant to Plaintiffs' actual claim for knowing receipt, which turns on the redemption payments *from the Funds* and their allegations of Citco Fund Services' bad faith calculation of those payments in the Netherlands. *See* Compl. ¶¶ 9, 17, 137-67, *Fairfield Sentry Ltd. v. HSBC Secs. Servs. (Lux.) S.A.*, Adv. Pro. No. 10-3630 (Bankr. S.D.N.Y. Aug. 11, 2021) (Dkt. 167) ("<u>Compl.</u>"). Plaintiffs' claims here are not about, and do not arise out of, any investment with BLMIS. Even if the Funds' investments with Madoff were relevant, however, those investments – not made by HSSL – are not the sort of minimum contacts that would support personal jurisdiction over HSSL. As the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), establishes, the defendants' knowledge of the *plaintiffs'* contacts with the forum – here, the Funds' alleged contacts with BLMIS – are insufficient to establish personal jurisdiction.

---

[1]    Unless otherwise noted, citations to "(Dkt. __)" refer to the corresponding entry on the administratively consolidated docket in these cases: *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y.).

*Second*, Plaintiffs allege in a footnote labeled "+" to an exhibit to the Complaint that redemption payments from Sentry (but not Sigma) to HSSL were paid through a correspondent bank account in the United States. *See* Compl. Ex. A n.+.[2]  Plaintiffs notably do not allege that this account – which they do not identify – was an account held by HSSL.  In fact, they specifically plead the opposite:  Exhibits A and B specify the accounts to which Funds transmitted the redemption payments to HSSL, and they list *exclusively* bank accounts in Bermuda and London, not New York.  There is no specific allegation that HSSL used the U.S. banking system to receive the redemption payments.

In any event, the mere use of a bank account at a U.S. financial institution to facilitate the receipt of dollar-denominated payments does not subject HSSL to personal jurisdiction in the United States.  *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." (citing cases)).  Foreign banks often maintain correspondent accounts denominated in dollars to facilitate the clearing of foreign dollar transactions.  These accounts are both common, because foreign banks cannot generally directly hold dollar-denominated accounts in their home countries, and essential to international commerce and to the economy, because they facilitate clearance of more than a trillion dollars in transactions each day.  Making a payment in U.S. dollars, and facilitating that payment ministerially through a U.S. bank account, has been widely recognized in this Circuit not to give rise to personal jurisdiction; were it otherwise, virtually anyone in the world who does business in U.S. dollars would potentially be subject to personal jurisdiction in New York.  *See*

---

[2]    Sigma investments were denominated in Euros, not U.S. dollars.  Compl. ¶ 42.  Plaintiffs do not assert jurisdiction with respect to redemptions from Sigma based on the use of correspondent accounts.

*infra* Section A.2 (citing cases establishing that use of a correspondent bank account alone does not confer personal jurisdiction).  Moreover, Plaintiffs' claims do not arise out of the use of any correspondent account, even if it were a sufficiently purposeful contact.

*Finally*, even if minimum contacts were satisfied, the exercise of jurisdiction would be unreasonable under the circumstances and for that reason impermissible.  The majority (if not all) of relevant evidence is overseas in the BVI, the Netherlands, or Luxembourg.  The United States has little to no interest in adjudicating this foreign law claim between foreign parties for the recovery of purely foreign payments under a foreign law contract.  The federal court system only has subject-matter jurisdiction over the case because the claim is related to an ancillary Chapter 15 case, but that does not obviate the need to establish that the exercise of personal jurisdiction is reasonable here.

Even Plaintiffs' interest in litigating in this forum is very low.  Plaintiffs have proffered no reason why the United States is more reasonable than their home jurisdiction of the BVI, or HSSL's home jurisdiction of Luxembourg.  Finally, the burden on HSSL of litigating in New York is significant.  The witnesses and evidence in this action are all overseas and HSSL, a Luxembourg financial institution, has obligations under foreign secrecy and privacy law.  Discovery in these actions may potentially expose HSSL to civil and criminal penalties in Luxembourg.

For these reasons, HSSL should be dismissed for lack of personal jurisdiction.

## BACKGROUND

These cases are ancillary to the foreign liquidation of the Funds in the BVI.  The Funds were placed into liquidation in 2009 before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands after BLMIS's fraud was publicly revealed. [3]

---

[3]    Compl. ¶¶ 28, 173-79.

Between October 2009 and March 2010, Plaintiffs commenced actions in the BVI against a number of the Funds' alleged investors seeking restitution on the theory that the Funds mistakenly made redemption payments prior to and contemporaneously with BLMIS's collapse,[4] and have since brought more than 300 actions in the United States. Plaintiffs have repeatedly asserted that they brought those claims here on the belief – adjudicated to have been mistaken – that Defendants consented to personal jurisdiction in New York when they signed subscription agreements for the Funds.[5] The New York actions, including this action against HSSL, were consolidated before this Court after the Funds' foreign liquidators' petitions for Chapter 15 recognition were granted. The cases were stayed shortly thereafter pending resolution of the BVI actions, which were poised to present potentially dispositive rulings on claims in the BVI and New York actions.

In 2014, the Privy Council, which is the court of last resort for the BVI, affirmed dismissal of the Liquidators' BVI law claims for restitution based on "mistaken" payment. Starting in 2016, after receiving that unfavorable decision, Plaintiffs discontinued all remaining BVI actions,[6] and began prosecuting the New York actions under a new theory that the payment of the redemptions was not merely mistaken but the result of bad faith by the Funds' administrator, Citco Fund Services. Beginning in 2018, the Bankruptcy Court issued a series of decisions (*Fairfield I* through

---

[4]    *See* Hare Decl. ¶ 15 (Dkt. 925).

[5]    *See* July 27, 2016 Hr'g. Tr. at 12:3-8 ("THE COURT: It just sounds like you litigated these issues or you should litigate them in the BVI. I don't understand why they're here. [PLAINTIFFS' COUNSEL]: Well, Judge, the issues are here because there's a forum selection clause, and because the cases are here. These defendants –").

[6]    *See* Hare Decl. ¶ 68 (Dkt. 925). In the BVI courts, the Liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged miscalculation of their NAV. The Liquidators lost those claims at all levels of the BVI court system. *See Fairfield Sentry Ltd. (in Liquidation) v. Migani* [2014] UKPC 9 ¶ 23 (appeal taken from BVI) (concluding the Liquidators' approach is "an impossible construction"). They also lost on their claim that redeeming investors did not give good consideration for the redemptions. *See generally id.*

*Fairfield IV*),[7] rejecting the bulk of Plaintiffs' claims and personal jurisdiction arguments, though it did not ever fully resolve the issue of personal jurisdiction in individual cases.[8]  Most relevant here, in August 2018, the Court issued *Fairfield I*, holding that the instant action did not arise with respect to the subscription agreements and that the forum selection clause contained in the subscription agreements accordingly did not apply.[9]

The sole remaining claim in this action is for knowing receipt.  Compl. ¶¶ 130-36.  Knowing receipt is a specific type of equitable claim that permits a BVI court to find that the circumstances of a transfer of assets are such that although the recipient received legal title and possession, equitable title was retained by the transferor – rendering the transferee an involuntary trustee.  To plead a claim for knowing receipt, "the plaintiff must show, [1], a disposal of his assets in breach of fiduciary duty; [2], the beneficial receipt by the defendant of assets which are traceable

---

[7]    *See Fairfield I*, 2018 WL 3756343; *In re Fairfield Sentry Ltd.*, 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); *In re Fairfield Sentry Ltd.*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"); *In re Fairfield Sentry*, 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) ("*Fairfield IV*").

[8]    HSSL first moved to dismiss for lack of personal jurisdiction in 2017.  *See, e.g.*, Consol. Mem. of Law in Opp'n to Pls.' Mot. for Leave to Amend and in Supp. of Defs' Mot. to Dismiss (Dkt. 960); HSBC Defs' Supp. Mem. of Law in Opp'n to Pls' Mot. for Leave to Amend and in Supp. of Defs.' Mot. to Dismiss (Dkt. 1213).

Because of the stay and other procedural orders entered during this litigation by Judges Lifland and Bernstein, that was HSSL's first opportunity to challenge personal jurisdiction.  Those 2017 motions have never been fully resolved, and since 2017 there have been a number of stipulated orders preserving the defense.  *See, e.g.*, Order and Stipulation ¶ 3 (Dkt. 1735); Stipulated Order ¶ I.A, *Fairfield Sentry Ltd. v. HSBC Secs. Servs. (Lux.) S.A.*, Adv. Pro. No. 10-3630 (Bankr. S.D.N.Y. Apr. 15, 2019) (Dkt. 98); Scheduling Order ¶ 4 (Dkt. 2926); Scheduling Order ¶ 5 (Dkt. 3028); Stipulated Order ¶ II.1, *Fairfield Sentry Ltd. v. HSBC Secs. Servs. (Lux.) S.A.*, Adv. Pro. No. 10-3630 (Bankr. S.D.N.Y. Feb. 26, 2021) (Dkt. 130).

[9]    *Fairfield I*, 2018 WL 3756343, at *12 ("[W]hile the Subscription Agreement governs subscriptions and refers to the Articles, the Articles govern redemptions and make no mention of the Subscription Agreement. . . .  Accordingly, the Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction . . . .").

as representing the assets of the plaintiff; and [3], knowledge on the part of the defendant that the assets he received are traceable to a breach of fiduciary duty." *Fairfield IV*, 2021 WL 771677, at *3 (quoting *El Ajou v. Dollar Land Holdings Ltd.* [1994] 2 All E.R. 685, 700). Plaintiffs here are apparently pursuing this equitable relief with respect to 12 redemptions allegedly paid to HSSL. *See* Compl. Exs. A & B. The amount of those redemptions payments was allegedly premised on the NAV of the Funds as calculated by the Funds and their administrative agent, Citco Fund Services. The redemption payments themselves were owed under an enforceable contract upheld, notwithstanding BLMIS's fraud, both by the Privy Council and this Court. *Fairfield Sentry Ltd. (in Liquidation) v. Migani* [2014] UKPC 9 ¶¶ 21-24 (appeal taken from BVI) ("*Migani*"); *Fairfield II*, 596 B.R. at 295-97.

## ARGUMENT

### I.     HSSL's Alleged Contacts with the Forum Are Insufficient To Establish Jurisdiction

This Court has previously held that HSSL did not consent to personal jurisdiction in New York by subscribing to the Funds. *See Fairfield I*, 2018 WL 3756343, at *12. Plaintiffs do not allege any other form of consent to jurisdiction in the United States and, accordingly, must identify some other basis to carry their "burden of establishing jurisdiction over the defendant." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016) (quoting *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)). Plaintiffs must make this showing with respect to "*each defendant,*" *Langenberg v. Sofair*, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (emphasis in original), and "'*each* claim asserted.'" *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 586 (S.D.N.Y. 2017) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)) (emphasis in original). At the motion to dismiss stage, in the absence of jurisdictional discovery, Plaintiffs have the pleading burden, and "must make a prima facie showing that jurisdiction exists" over HSSL consistent with due process. *Charles Schwab Corp.*

8

*v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (internal quotation marks omitted). [10]   Where Plaintiffs have not done so, their claims should be dismissed.

Plaintiffs do not allege that the Court has general jurisdiction over HSSL, a Luxembourg financial institution that is not "at home" in the United States, and so Plaintiffs must plead facts supporting the exercise of specific jurisdiction over HSSL.  *See Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014).  To do so, Plaintiffs must assert that (1) their claims arise out of the Defendants' sufficient "minimum contacts with the relevant forum," and (2) "the exercise of jurisdiction is reasonable in the circumstances."  *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted).   The minimum contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation," a relationship that "must arise out of contacts that the defendant *himself* creates with the forum State."  *Walden*, 571 U.S. at 284 (internal quotation marks omitted) (emphasis in original).  Plaintiffs have failed to meet this pleading burden.

### A.  Alleged Foreseeability of Sentry's Investment in BLMIS Does Not Satisfy Minimum Contacts

Plaintiffs assert that the Court has jurisdiction over HSSL based on an allegation in the Complaint that HSSL invested in the Funds while "knowing and intending that the Funds would invest substantially all of that money" in BLMIS.  Compl. ¶ 20.  But that allegation is jurisdictionally irrelevant for at least three reasons.

---

[10]     As the Second Circuit has held, if Plaintiffs take jurisdictional discovery in connection with this motion, then Plaintiffs cannot rely on their pleadings to establish jurisdiction, and must instead establish all relevant jurisdictional facts with admissible factual material.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013).  HSSL thus reserves the right in subsequent submissions to argue the insufficiency of Plaintiffs' supporting evidence.

*First*, the allegation that HSSL knew that *subscription payments* into the Fairfield Funds may have been comingled with subscriptions from others, and the net surplus of those payments (in excess of redemption payments) would be invested by the Funds with BLMIS, does not give rise to this litigation and thus does not support jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). Plaintiffs' claim is not predicated on whether or not the funds they seek to recover were ever placed with or controlled by BLMIS. Nor does Plaintiffs' claim focus on HSSL's decision to subscribe to investments with the Funds as the basis for either liability or jurisdiction, a theory that would be irreconcilable with this Court's prior ruling and thus barred by law of the case. *See Fairfield I*, 2018 WL 3756343, at *11-12 (finding subscription agreements irrelevant to claim because the claim was not based on subscription). Rather, Plaintiffs' claim for knowing receipt relates to and arises out of the calculation of the NAV by the Funds' Dutch administrator, Citco Fund Services, and the foreign Funds' subsequent alleged disbursement of redemption payments abroad on the basis of those calculations from their Irish bank accounts to bank accounts in London and Bermuda. *See* Compl. ¶¶ 137, 160, 179, Ex. A. HSSL made its request for those redemptions by tendering shares to Citco Fund Services in the Netherlands, *see Migani* ¶¶ 14-16; the redemptions were processed by Citco Fund Services abroad, Pls.' Second-Round Appeal at 24; and, in turn, redemptions were funded from the Funds' bank accounts held at Citco Bank in Ireland, *see Fairfield III*, 2020 WL 7345988 at *7 (finding all transfers paid by Citco Bank). There is no dispute that every element of the transaction is "purely foreign." Pls.' Second-Round Appeal at 24.

For the same reason, *U.S. Bank National Association v. Bank of America N.A.*, 916 F.3d

143 (2d Cir. 2019), which this Court applied to hold that it may exercise jurisdiction over Andrés

Piedrahita in its decision in the Fairfield Greenwich Group case, *In re Fairfield Sentry Ltd.*, 627

B.R. 546, 568 (Bankr. S.D.N.Y. 2021) (Morris, C.J.) ("*FGG*"), does not establish jurisdiction here.

*U.S. Bank* found specific jurisdiction in Indiana over a defendant that made misrepresentations

selling a bundle of mortgages because the misrepresentations related specifically to a mortgage for

an Indiana property and breach of a promise to cure by taking action in Indiana.  916 F.3d at 151-

52 (describing breach and obligation to cure).  In *FGG*, this Court found specific jurisdiction over

Mr. Piedrahita because he spent a "substantial amount of time" in New York and met with other

"founding partners" of FGG and Madoff in New York; these were the facts that gave rise to the

claims against him for return of management and performance fees and supported jurisdiction.

627 B.R. at 568.  Unlike in those cases, the claims against HSSL are not based on any action taken

by HSSL or even directed by HSSL in the United States.  Plaintiffs seek to recover against HSSL

because Citco Fund Services, which was the Funds' agent in the Netherlands, purportedly breached

a duty it owed to the Funds in the BVI when it paid money to HSSL, a Luxembourg financial

institution, and because HSSL allegedly knew of the breach.  None of those facts have anything to

do with the United States.

Second, mere knowledge that Sentry would invest money it raised in the BVI with BLMIS

in New York is insufficient as a matter of law to support jurisdiction.  The Supreme Court's opinion

in *Walden* is dispositive on this point.  In *Walden*, a Nevada-based plaintiff sued a Georgia police

officer in Nevada court for an unlawful seizure of money in a Georgia airport.  571 U.S. at 279-

81.  The police officer knew that the plaintiff had connections to Nevada and that the seizure would

delay the return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it

unconstitutional to exercise personal jurisdiction over the police officer in Nevada.  *Id.* at 289.  As

the Supreme Court explained, the foreseeability of the plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over the defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*. The Supreme Court instead has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* at 284; *see also Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) ("The substantial connection . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*.") (internal quotation marks omitted) (emphasis in original).

Even if true, the assertion that HSSL knew the Funds would invest with BLMIS falls far short even of the facts of *Walden*, and under the circumstances of this case, it is logical that such an allegation is insufficient to haul HSSL into court. Once HSSL transferred subscription money to the Funds, the money was no longer HSSL's because HSSL entered into a contract to exchange it for shares.[11] While some of the money invested in the Funds was transferred to Madoff, and some of the redemption payments may have been funded by transfers from BLMIS, that was not universally or even typically the case: As Plaintiffs allege, the Funds netted subscriptions against redemptions, and accordingly, often funded redemption payments with money that came from new investments. Thus, that money was never placed with BLMIS in New York at all. *See* Compl.

---

[11] *See Fairfield II*, 596 B.R. at 288 ("In rejecting Sentry's arguments relating to the Certification Issue, the Privy Council considered the provisions of Articles 9, 10 and 11, and concluded that the NAV had to be definitively determined at the time of the subscription or redemption; otherwise, the scheme was 'unworkable.'"); *see also Migani* ¶ 10 ("The Subscription Agreement binds the subscriber to his subscription and to the terms of the Fund Documents.").

¶ 47 (alleging that subscription money was used to pay redemptions as a "shortcut").[12]  The law

does not support Plaintiffs' expansive view that an investment company can sue its investors in

any jurisdiction where that investment company itself decides to make investments.

Third, Plaintiffs' suggestion that money placed with the Funds may have been – but was

not necessarily – invested by the Funds in BLMIS is not a basis for asserting personal jurisdiction

over investors in the Funds; it is nothing more than the type of "stream of commerce" theory of

personal jurisdiction rejected by the Supreme Court.  See J. McIntyre Mach., Ltd. v. Nicastro, 564

U.S. 873, 882, 886 (2011) ("[I]t is not enough that [a] defendant might have predicted that its

goods will reach the forum," but rather the defendant must "engage[] in conduct purposefully

directed at [the forum].");[13] In re Mexican Gov't Bonds Antitrust Litig., 2020 WL 7046837, at *3-

4 (S.D.N.Y. Nov. 30, 2020) (holding neither an attempt to profit from conduct underlying claim

nor foreseeability of a harm in forum were sufficient to establish jurisdiction in absence of a

defendant's contact with forum).

Notably, this case is very different from Picard v. Bureau of Labor Insurance (In re

Securities Investor Protection Corp.), 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) (Lifland, J.)

("BLI"), in which Judge Lifland held that a defendant's investment with Sentry was sufficient to

---

[12]     Sigma itself never invested with BLMIS.  Sigma was instead a shareholder in Sentry that
received redemptions from Sentry indistinguishable from the redemptions received by HSSL.  The
Complaint also alleges that Sigma used new subscriptions to pay new redemption requests,
meaning that HSSL's Sigma subscriptions (paid in Euros) may never have even made it to Sentry
in the BVI, let alone to BLMIS in New York.  See Compl. ¶¶ 42, 47.

[13]     In McIntyre, a worker at a scrap metal business in New Jersey hurt himself while using one
of the U.K. defendant's machines and sued in New Jersey.  564 U.S. at 878.  The Court held that
personal jurisdiction in New Jersey was lacking because the defendant did not purposefully direct
its conduct at the forum.  Id.  This was so despite there being evidence that it was a high likelihood
that the machines would have been used in New Jersey.  See id. at 895 (Ginsburg, J., dissenting).
Even if it were foreseeable that investments would be made in New York-based BLMIS, HSSL
did not purposely direct its conduct to New York – but instead to the BVI.

establish personal jurisdiction *with respect to claims arising from the liquidation of BLMIS*.  In that case, the allegations concerned transfers by BLMIS from New York, and the court held that the decision to invest in a fund that would ultimately invest with Madoff gave rise to personal jurisdiction with respect to claims arising from that *Madoff* investment.  *Id*.  But Plaintiffs' claims in this case are not brought by the Madoff Trustee and do not arise from the Madoff investment; they arise from the redemption payments made by the Funds from the BVI to foreign defendants. Even if it was foreseeable to HSSL that investing with the Funds would give rise to personal jurisdiction in New York with respect to claims arising from a New York investment, it is not credible that HSSL would have understood itself to be signing up to U.S. jurisdiction with respect to claims of the Funds themselves (except with respect to claims arising out of the subscription agreements, which this Court held was not the case here).[14]

## B. Alleged Use of Correspondent Accounts and Investment in U.S. Dollars Does Not Support Minimum Contacts

Plaintiffs also claim that minimum contacts are established based on an inference alleged in a footnote to Exhibit A to the Complaint that the redemption payments made by Sentry – but *not Sigma* – "went through" a correspondent bank account in the United States on their way to HSSL in Luxembourg.  This argument does not support the exercise of personal jurisdiction over HSSL.

For one, Plaintiffs made no well-pled allegation that HSSL used a correspondent account *at all*.  Instead, what the Complaint alleges is that the payments to HSSL were paid into accounts at HSBC Holdings PLC-affiliated banks in Bermuda and London.  *See* Compl. Exs. A and B.

---

[14]     In any event, the holding in *BLI* is in doubt following the subsequent Supreme Court decision in *Walden*.  The court in *BLI* relied on BLI's alleged knowledge of the feeder fund's investments in BLMIS, 480 B.R. at 517, which is the type of foreseeability argument rejected in *Walden*, *see supra* at 11-12.

Plaintiffs' generic allegation in footnote "+" that payments were made into accounts in the United States is belied by their specific allegations – presumably based on the Funds' own records – that payments to HSSL were not made through accounts in the United States. Even were it otherwise, foreign financial institutions often use correspondent accounts ministerially to receive U.S. dollar-denominated payments. Here, the redemption payments from Sentry allegedly traveled from Sentry in the BVI by way of its Irish custodian Citco Bank to HSSL in Luxembourg by way of a U.S.-based correspondent account to facilitate clearing the U.S. dollar transactions. *Fairfield III*, 2020 WL 7345988, at *6 ("All of the redemption payments were made by the Dublin Branch of Citco Bank where the Funds maintained accounts.").

Plaintiffs' allegations concerning HSSL's receipt of redemption payments are at most allegations of *passive* conduct – *e.g.*, that HSSL received money that was transmitted by someone else, namely, the Funds themselves. But the Funds' own conduct in sending money *to* HSSL is not sufficient to establish personal jurisdiction over HSSL. *See Walden*, 571 U.S. at 289. In contrast, the only purportedly active conduct by HSSL that is alleged is that, from Luxembourg, HSSL (i) solicited clients to invest in BLMIS feeder funds, Compl. ¶ 82, 125, (ii) purchased shares in BVI funds that invested in BLMIS, *id.* ¶ 130, and (iii) received redemption payments that had been deposited into bank accounts in the United States, *id.* ¶¶ 20, 181-82. The first two allegations are irrelevant for the reasons set forth above in Section A.1, insofar as they are insufficient under *Walden*. *See supra* at 11-12 (discussing *Walden*); *Walden*, 571 U.S. at 284 (The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."); *see also Asahi*, 480 U.S. at 112 ("The substantial connection . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant*

15

*purposefully directed toward the forum State*.") (internal quotation marks omitted) (emphasis in original).  The third allegation, taken alone, does not establish minimum contacts with the forum.

Receiving payments at a U.S.-based correspondent bank account is insufficient to establish personal jurisdiction in this case.  The alleged incidental use of a bank account in the United States to facilitate U.S. dollar-denominated payments to settle a foreign securities transaction – here, the redemption of shares in a BVI company by its Luxembourg shareholder – does not, as a matter of controlling law, give rise to personal jurisdiction.  Again, the redemption payments at issue here were not directed by HSSL, and there is no allegation that HSSL specifically took advantage of the U.S. financial system as the object of any purposeful conduct.  Rather, HSSL is alleged to have received payments made from one foreign party to another, facilitated through foreign originating and receiving banks, and made under a foreign contract that effectuated the redemption of securities issued by a foreign investment company.  To the extent the payments transited through a U.S.-based account during the course of that transaction, it was solely for the purpose of facilitating that transfer in U.S. dollars under a foreign contract.  The mere use of a correspondent account by a foreign bank to clear transfers for a foreign contract denominated in U.S. dollars does not, as a matter of law, confer jurisdiction over the foreign bank.  *See Hau Yin To v. HSBC Holdings, PLC*, 2017 WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and "not amount[ing] to 'purposeful availment' of the laws of" the

forum); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." (citing cases)).

Hundreds of thousands of foreign dollar transactions valued at over $1.5 trillion are cleared in New York each day. *See generally Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) ("In New York each day, on average, about 440,000 [Clearing House Interbank Payments System (CHIPS)]" – the system for most large banking transactions – "transfers occur, in dollar amounts totaling about $1.5 trillion."). Were the incidental use of U.S.-based accounts sufficient to confer personal jurisdiction over foreign entities, New York would become a forum for any foreign commercial dispute, contrary to federal and state policy, merely because global transactions are frequently cleared in U.S. dollars. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *see also Universal Trading & Inv. Co., Inc. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on a correspondent bank account.") (internal quotation marks omitted).

Plaintiffs have cited *Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56 (S.D.N.Y. 2016), in prior briefing in arguing that the use of a correspondent account in New York is sufficient to establish personal jurisdiction.[15] But *Arcapita* is inapposite because the contacts there were plainly more purposeful than those alleged here. *Id.* at 70. *Arcapita* concerned an investment scheme in which the debtor entered into placement

---

[15]    *See* Foreign Representatives' Opp. to Defendants' Mot. to Dismiss at 11-18 (Dkt. 1336).

agreements with defendant banks that allowed the banks to propose investments by sending offers to Arcapita specifying the currency and bank account for Arcapita to transfer funds. *Id.* Arcapita accepted three investment offers designated by the banks in U.S. dollars payable to correspondent accounts in New York. *Id.* The court found it had personal jurisdiction over the banks because the banks purposefully selected U.S. dollars and New York accounts, when under the placement agreements the banks could have selected any currency and any account anywhere in the world. *Id.* at 69-70.

Unlike in *Arcapita*, here HSSL did not select U.S. dollars as the base currency for its investments with Sentry; Sentry chose the base currency. *See* Hare Decl., Ex. F at 1, 9 (Dkt. 925-6) (Sentry Articles, arts. 1, 10(1)(c), defining "Base Currency" as "the currency of the United States of America" and stating "payment shall be made to the Applicant in the Base Currency in respect of the redemption or purchase of Shares"). At most, the Complaint alleges that – apparently unbeknownst to HSSL – payments transited an account belonging to someone in New York. This is not a purposeful U.S. contact. *See Tymoshenko*, 2012 WL 6186471, at *3. HSSL's only purposeful actions were its decision to invest in a BVI investment company and its request to redeem funds from that company. HSSL's receipt of redemption payments merely settled a securities transaction between HSSL and the Funds.

Plaintiffs have also relied on *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161 (2d Cir. 2013), to argue that use of a correspondent account in the United States is itself sufficient to establish specific jurisdiction over HSSL, but there, the Second Circuit concluded that wire transfers from a correspondent bank account could establish personal jurisdiction when the transfers are part of the "principal wrong" alleged. *Id.* at 170-71. The principal wrong in that case was the intentional use of a correspondent account to fund terrorist activity in violation of statutory

18

duties in antiterrorism laws. *Id.* at 171.

Here, there is no allegation that the transmission of funds through HSSL's purported correspondent account is the principal wrong that Plaintiffs are suing on. *Plaintiffs allege no fraudulent scheme or breach of duty by HSSL at all.* Plaintiffs bring a narrow, equitable claim to unwind a payment by the Funds' agent, Citco Fund Services, in breach of a duty that the agent may have owed to the Funds. If money passed through a correspondent account in the United States, that is entirely incidental to Plaintiffs' claims about a breach by Citco Fund Services and accordingly is insufficient to establish jurisdiction. *See Hau Yin To*, 2017 WL 816136, at *7 n.6 (finding use of correspondent account incidental). Similarly, Plaintiffs have relied on *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1 (N.Y. 2016), where the plaintiff alleged that the defendant knowingly used a correspondent account to launder money and pay bribes. *Id.* at 10. But *Al Rushaid* simply reaffirms the holding of *Licci* that use of a correspondent account that is "integral" to an illegal scheme is sufficient to establish jurisdiction over a claim arising out of the scheme. HSSL's alleged use of a correspondent account is entirely incidental, not integral, to Plaintiffs' claim and thus is not sufficient. *See Hau Yin To*, 2017 WL 816136, at *7 n.6 (distinguishing *Al Rushaid* as limited to use of correspondent account integral to fraud).[16]

### C. Citco Bank's Use of a Correspondent Account Is Irrelevant to the Minimum Contacts Analysis

Plaintiffs advance a related argument that the Funds' own custodian, Citco Bank, based in Ireland, used a correspondent account to transfer the redemption payments to HSSL. *See* Compl. Ex. A. n.+. There is no allegation that HSSL was involved in the selection of this correspondent account by the Funds' agent. The fact that Citco Bank unilaterally chose to use a correspondent

---

[16] The fact that Sigma payments did not go through a correspondent account underscores its happenstance nature and lack of materiality to the redemption payments.

account is irrelevant to whether the Court may exercise jurisdiction over *HSSL* because jurisdiction must be based on the *defendant's* contacts with the forum, not plaintiff's. *See Walden*, 571 U.S. at 284; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

## II.    The Exercise of Personal Jurisdiction Over HSSL Would Be Unreasonable

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." (citation omitted)).    Courts apply a "sliding scale" in assessing whether jurisdiction is consistent with due process:  "the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction." *In re CIL Limited*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (internal quotation marks and citation omitted); *see also Porina v. Marward Shipping Co.*, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show that jurisdiction over the defendant is proper.").    In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must consider the burden on defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi*, 480 U.S. at 113.

Plaintiffs here seek to rely on the most incidental of contacts to establish jurisdiction. *See supra* Pt. A. If those contacts are deemed sufficient, which they should not be, Plaintiffs must therefore make a *stronger showing* that the exercise of jurisdiction would be reasonable, but each

of the factors that the Court must assess in weighing reasonableness weigh *against* jurisdiction: the U.S. has a minimal (if any) interest in this litigation, the burden on HSSL in litigating here is high, and Plaintiffs cannot show that New York is more reasonable than other available fora including the BVI or Luxembourg. Because the alleged contacts are insignificant and all of the reasonableness factors weigh against jurisdiction, the Court should dismiss the claims against HSSL.

*First*, the United States' interest in adjudicating this dispute is minimal at best. The dispute is between foreign parties arising under foreign law pursuant to a foreign contract for the return of cash sent between two foreign countries in a purely foreign transaction. The case was only brought before this Court because Plaintiffs mistakenly believed that HSSL had consented to jurisdiction – a position now rejected by the Court. Had Plaintiffs not filed a petition for Chapter 15 recognition, there would be no subject matter jurisdiction in federal court over this claim at all for what is essentially a private dispute between foreign parties. *In re Fairfield Sentry Ltd.*, 458 B.R. 665, 685 (S.D.N.Y. 2011) (Preska, J.) ("[T]hese claims are disputes between two private parties that have existed for centuries and are 'made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.'" (citation omitted)). The claim for knowing receipt is itself non-core, as there are no alleged debtor assets in the United States. *Id.* at 682 ("Here, there are no assets in the United States. The Plaintiffs' actions seek assets, so their location is relevant. Plaintiffs do not seek discovery or stays of proceedings in the United States. Thus, *the ancillary character of the Chapter 15 cases here is at a low ebb*—it is certainly not within the core jurisdiction of the bankruptcy court to aid the BVI courts in these cases because there are no assets sought in the United States." (emphasis supplied)). The Supreme Court has cautioned against finding jurisdiction over such a claim between *foreign* parties arising under *foreign* law. *See Asahi*,

480 U.S. at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."); *see also Mashreqbank PSC*, 12 N.E.3d at 459-60 (noting minimal interest of New York in pursuing every purported fraud that passes through correspondent accounts).

*Second*, defending Plaintiffs' claims before this Court would impose substantial burdens on HSSL. HSSL is a Luxembourg financial institution, and discovery of documents about these redemption payments in the United States would potentially expose HSSL to civil and criminal liability. *See* Bench Ruling Granting in Part and Den. in Part the Foreign Representatives Mot. Seeking Limited Relief (Dkt. 799-2) ("The various respondents have described . . . the strong and undeniable interest of many nations in enforcing their banking secrecy laws. Thus, yielding to the Foreign Representative's Disclosure Request implicates the significant bank customer confidentiality laws of no fewer than 30 countries . . . . As such, this Court is hard-pressed to find any compelling United States' interest in mandating discovery here at this juncture of the pending litigation.").

*Third*, Plaintiffs have not demonstrated that it is more reasonable for them to litigate their claims against HSSL in New York rather than in the BVI, where the Funds are at home and where a court is administrating its main bankruptcy proceeding, or in Luxembourg, where HSSL is at home and where Luxembourg courts could address the nation's privacy and bank secrecy interests. Indeed, Plaintiffs initially chose the BVI as the preferable and most convenient forum to pursue related claims. Only upon losing at the highest level in the BVI court system did Plaintiffs then discontinue their suits in that forum, and pursue them here under new legal theories in what they hoped would be a more advantageous forum. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (noting that jurisdiction had been found improper where "the

plaintiffs were engaged in forum-shopping"). Plaintiffs' maneuvering demonstrates a lack of interest in obtaining convenient and effective relief and undercuts any claim that the assertion of personal jurisdiction over HSSL in this Court would be reasonable.

Courts have held that defendants should be dismissed in circumstances like this, where even assuming "Defendants' contacts with [the forum] only 'barely satisf[y] the minimum contacts standard,'" "a majority of the reasonableness factors weigh against the exercise of jurisdiction." *Rocky Mountain Chocolate Factory v. Arellano*, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017) (citation omitted); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004) (The defendant's "contacts with [the forum] were quite limited, barely satisfying the minimum contacts standard. As a result, [the defendant] need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry. Because the majority of the . . . reasonableness factors weigh in [the defendant's] favor, . . . exercise of personal jurisdiction over [the defendant] . . . would offend traditional notions of fair play and substantial justice."); *Manko Window Sys., Inc. v. Prestik*, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) ("[B]ecause [the defendant's] contacts with [the forum] are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction, the Court grants Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)."). The same result is warranted here.

## **CONCLUSION**

Because the Complaint fails to provide "any basis to demonstrate that [this Court] would

have . . . personal jurisdiction" over HSSL, *see Spiegel v. Schulman*, 604 F.3d 72, 78 (2d Cir.

2010), the Court should grant the instant motion to dismiss HSSL.


Dated: October 29, 2021          Respectfully submitted,
     New York, NY

     CLEARY   GOTTLIEB   STEEN   &
     HAMILTON LLP

     By: _____

     Jeffrey A. Rosenthal
     Joseph M. Kay
     Christine M. Jordan
     JD Colavecchio
     One Liberty Plaza
     New York, NY 10006
     T: 212-225-2000
     F: 212-225-3999
     jrosenthal@cgsh.com
     jkay@cgsh.com
     cjordan@cgsh.com
     jdcolavecchio@cgsh.com

     Nowell D. Bamberger
     2112 Pennsylvania Avenue, N.W.
     Washington, D.C. 20037
     T: 202-974-1500
     F: 202-974-1999
     nbamberger@cgsh.com

     *Counsel   for   Defendant   HSBC   Securities
     Services (Luxembourg) S.A.*