**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>**Fairfield Sentry Ltd.,** *et al.,*<br><br>    **Debtors in Foreign Proceedings.** | ) <br> ) <br> )    **Chapter 15 Case** <br> ) <br> )    **Case No. 10-13164 (CGM)** <br> ) <br> ) |
| **Fairfield Sentry Ltd. (In Liquidation),** *et al.,* **acting by and through the Foreign Representatives thereof,** <br>         **Plaintiffs,** <br><br> **-against-** <br><br> **HSBC Securities Services (Luxembourg) S.A.,** *et al.,* <br>         **Defendants.** | ) <br> ) <br> )    **Adv. Pro. No. 10-03630 (CGM)** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**HSBC SECURITIES SERVICES (LUXEMBOURG) S.A.'S MOTION TO DISMISS FOR**
**LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

UNDISPUTED FACTS ESTABLISHED IN DISCOVERY ............................................ 2

ARGUMENT ..................................................................................................... 6

I.      HSSL's Ministerial Subscriptions To The Funds Are Not Relevant
        U.S. Contacts ..................................................................................... 6

        A.      HSSL Did Not Purposefully Direct Its Conduct Toward
                The United States By Subscribing To The Funds Solely At
                The Direction And On Behalf Of Its Clients ............................... 7

        B.      Due Diligence Unrelated To The Funds Or Investments In
                Them Is Irrelevant To Jurisdiction Over These Claims .............. 11

        C.      As Plaintiffs' Own Expert Opines, The Receipt Of U.S.
                Dollar Payments Abroad Is Not A Relevant U.S. Contact ........... 13

II.     The Exercise Of Personal Jurisdiction Over HSSL Would Be
        Unreasonable ..................................................................................... 18

III.    Plaintiffs' Claims For A Single Sigma Redemption Should Be
        Dismissed ........................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Abelesz v. OTP Bank*,
    692 F.3d 638 (7th Cir. 2012) .................................................................16

*Al Rushaid v. Pictet & Cie*,
    28 N.Y.3d 316 (2016) ...................................................................17, 18

*American Estates Wines, Inc. v. Kreglinger Wine Estates Pty, Ltd., et al.*,
    2008 WL 819993 (D.N.J. Mar. 25, 2008)................................................15

*In re: Arcapita Bank B.S.C.(C)*,
    640 B.R. 604 (S.D.N.Y. 2022)..............................................................18

*Art Assure Ltd., LLC v. Artmentum GmbH*,
    2014 WL 5757545 (S.D.N.Y. Nov. 4, 2014)..............................................6

*Asahi Metal Indus. Co. v. Superior Ct. of Ca.*,
    480 U.S. 102 (1987)..........................................................................19

*Averbach v. Cairo Amman Bank*,
    2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022)...........................................18

*Bartlett v. Societe Generale de Banque Au Liban SAL*,
    2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020)..........................................18

*In re Bernard L. Madoff Inv. Sec., LLC*,
    708 F.3d 422 (2d Cir. 2013)..............................................................4, 9

*Bristol-Myers Squibb Co. v. Superior Ct. of Ca.*,
    137 S. Ct. 1773 (2017)...................................................................12, 20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).............................................................................1

*Daewoo Int'l (Am.) Corp. v. Orion Eng'g & Serv., Inc.*,
    2003 WL 22400198 (S.D.N.Y. Oct. 20, 2003).........................................17

*Dale v. Banque SCS All. S.A.*,
    2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005)..........................................18

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)....................................................................6

**Page(s)**

*Fairfield Sentry Ltd. (In Liquidation) v. Citibank, N.A. London*,
  2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) .......................................................11

*Fairfield Sentry Ltd. (in Liquidation) v. Migani*
  [2014] UKPC 9 ....................................................................................................4, 11

*In re Fairfield Sentry Ltd. Litig.*,
  458 B.R. 665 (S.D.N.Y. 2011) .........................................................................19, 20

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
  2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ...........................................14

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
  414 F.3d 325 (2d Cir. 2005) ..................................................................................11

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983) ...............................................................................................20

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) .......................................................................................7, 20

*Freeman v. HSBC Holdings PLC*,
  2021 WL 76925 (E.D.N.Y. Jan. 7, 2021) ..............................................................18

*Ge Dandong v. Pinnacle Performance Ltd.*,
  966 F. Supp. 2d 374 (S.D.N.Y. 2013) ...................................................................18

*Gucci Am. Inc. v. Weixing Li*,
  135 F. Supp. 3d 87 (S.D.N.Y. 2015) .....................................................................18

*Hau Yin To v. HSBC Holdings, PLC*,
  700 F. App'x 66 (2d Cir. 2017) .................................................................10, 17, 18

*J. McIntyre Mach. Ltd. v. Nicastro*,
  564 U.S. 873 (2011) ...........................................................................................2, 10

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
  131 F. Supp. 2d 544 (S.D.N.Y. 2001) .....................................................................9

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998) ....................................................................................9

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
  2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) ................................................. 10-11

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013) .....................................................................15, 17, 18

**Page(s)**

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
    23 N.Y.3d 129 (2014) ...................................................................................16

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)...........................................................................19

*Miller v. Arab Bank, PLC*,
    372 F. Supp. 3d 33 (E.D.N.Y. 2019) ...........................................................18

*Nike, Inc. v. Wu*,
    349 F. Supp. 3d 310 (S.D.N.Y. 2018)..........................................................18

*Peterson v. Iran*,
    2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) .............................................18

*Picard v. Banque Lombard Odier & Cie SA*,
    2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022)...................................11

*Picard v. Bureau of Labor Insurance*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Lifland, J.).......................................7

*Porina v. Marward Shipping Co.*,
    2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) .............................................19

*Schansman v. Sberbank*,
    565 F. Supp. 3d 405 (S.D.N.Y. 2021)..........................................................18

*Scott v. Breeland*,
    792 F.2d 925 (9th Cir. 1986) .......................................................................15

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) .....................................4

*In re Ski Train Fire in Kaprun, Austria*,
    342 F. Supp. 2d 207 (S.D.N.Y. 2004)...........................................................9

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
    277 F. Supp. 3d 521 (S.D.N.Y. 2017).................................................6, 13, 14

*SPV OSUS Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ...........................12

*Strauss v. Credit Lyonnais, S.A.*,
    175 F. Supp. 3d 3 (E.D.N.Y. 2016) ........................................................18, 20

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)......................................................................6, 7

**Page(s)**

*In re Tether & Bitfinex Crypto Asset Litig.*,
    576 F. Supp. 3d 55 (S.D.N.Y. 2021)........................................................................18

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)....................................................................................15

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
    751 F.2d 117 (2d Cir.1984)......................................................................................9

*Walden v. Fiore*,
    571 U.S. 277 (2014)...........................................................................................7, 10

*Weiss v. Nat'l Westminster Bank PLC*,
    176 F. Supp. 3d 264 (E.D.N.Y. 2016) ...................................................................18

**Statutes**

Bankruptcy Code § 550 ....................................................................................................4

Plaintiffs do not dispute that their claims, and the procedural posture of this Motion, are materially different from what the Court has previously addressed:

- Unlike the SIPA Trustee, Plaintiffs here sue on behalf of two BVI investment companies, asserting claims exclusively under BVI law related to the management of those companies premised on alleged breaches of fiduciary obligations by Citco Fund Services (Europe) B.V. in the Netherlands. Def.'s Opening Br. at 6-8, 10; *see also* Pls.'-Appellants' Opening Br. for Second-Round Appeal at 73, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (S.D.N.Y. July 21, 2021) (Dkt. 440) ("Pls.' Second-Round Appeal") (stating these claims are "…foreign law claims brought by foreign debtors to avoid foreign transfers between foreign entities…."); *Fairfield Sentry Ltd.*, 2021 WL 771677, at *3 (Bankr. S.D.N.Y. Feb. 23, 2021) (quoting BVI law elements of constructive trust claim).

- At Plaintiffs' insistence, this Motion has moved beyond mere allegations. HSBC Securities Services (Luxembourg) S.A. ("HSSL") has actively participated in a year of jurisdictional discovery – searching for and producing broad categories of documents, conducting custodial email searches, and providing sworn responses to interrogatories. Plaintiffs therefore have the burden of supporting jurisdiction through evidence.

When personal jurisdiction is disputed, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum…such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Here, the evidentiary record unambiguously shows that HSSL could not have expected to have to answer *these* claims, brought by *these plaintiffs*, in this Court. The subscriptions and redemptions at issue here were made by HSSL acting exclusively as a non-discretionary custodian of *client* investments made in its *clients'* names in a BVI share offering that was not open to U.S. investors. The money that the Funds then invested with BLMIS was not HSSL's money, it was the *Funds'* money, as Plaintiffs admitted in discovery. Plaintiffs do not argue – nor could they – that the Funds lacked a separate legal personality from HSSL. And HSSL did not hold or use a bank account in the United States to receive all but one of the redemptions.

To overcome these deficiencies Plaintiffs conflate the Funds with BLMIS itself, pretending that HSSL invested in BLMIS in the U.S., when it did not. And then they point to diligence on

BLMIS largely conducted by a different entity (HSBC Bank plc), totally unrelated in any way to the Fairfield Funds or their investments, and for an entirely different purpose (███████████ ██████████████████████████████████████████████████████████████████ ███████). But the law is clear that, to be relevant to the jurisdictional analysis, a forum contact must *at least* be "related to" the claim at issue. *J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). Plaintiffs fail to draw any such connection because there is none.

## UNDISPUTED FACTS ESTABLISHED IN DISCOVERY

The evidentiary record developed in discovery firmly supports HSSL's Motion[1]:

**(1)    *HSSL custodied non-discretionary, client investments in the Funds.*** HSSL was a Luxembourg bank with its principal place of business and place of incorporation in Luxembourg. Bamberger Decl. Ex. 7 (HSSL's Supp. R&Os to Pls.' 1st Interrogatories) Nos. 3 & 4. HSSL did not invest in New York-based BLMIS but instead – in its role as a custodian only – purchased shares of the BVI-based Funds on behalf of its clients in their names. *See* Bamberger Decl. Ex. 9 at 10 (HSSL's R&Os to Pls.' 2d Interrogatories) ("HSSL provided custodial services for certain of its customers and in that capacity acquired and held shares in the Funds as the agent of those customers solely upon the direction of its customers."); Decl. of Claude Quintus ("Quintus Decl.") ¶¶ 9-10, 14, 17, 21. Plaintiffs' own records make this clear, listing each share as being held in a name such as "███████████████" Quintus Decl. ¶ 21; *id.* Ex. 13. The money used to purchase shares and received when shares were redeemed was not HSSL's money, it was *client* money, held as such for the clients' benefit. *See* Quintus Decl. ¶¶ 9-11, 21-22; Decl. of Christophe Decker ("Decker Decl.") ¶¶ 13, 18, 26-27.

There is zero evidence that HSSL "deci[ded]" to "invest" in the Funds at all, much less

---

[1]    Jurisdictional discovery was authorized after HSSL filed its opening brief. The Parties met and conferred and agreed, in lieu of HSSL seeking leave to file a new opening brief, that it could rely on the documentary record in this reply.

with a view to ultimately placing money in the United States. *See* Opp. at 37.[2]  Rather, as confirmed both by HSSL itself and by sworn discovery responses and records produced by one of HSSL's clients months before Plaintiffs' briefing was due (and entirely ignored by them) HSSL's role was solely to execute its clients' instructions to purchase shares in the Funds. *See* Bamberger Decl. Ex. 8 (Amended Ans. and Objs. of Def. Private-Space Ltd. to Pltfs.' 1st Interrogatories) No. 7 ("As custodian, HSSL acted solely in a ministerial capacity with no discretion of its own or any involvement in PSL's investment decision-making process; HSSL subscribed (and redeemed) on behalf of PSL only when expressly instructed to do so by PSL."); Quintus Decl. Ex. 14 (████████████), Exs. 1-12 (████████████████). While HSSL did receive the Private Placement Memoranda ("PPMs"), *see* Opp. at 2-3, it received them ████████████████████████████████████████████████████████████████████████████████████████████████.[3]  Quintus Decl. ¶ 25.  HSSL neither cared nor had reason to care where the Funds were investing their money. *Id.* ¶¶ 10, 22-23. Provided the investments were ████████████████████████████████████████████ *Id.* ¶ 22.

　　**(2)    *HSSL's "money" was not "channeled" to BLMIS.*** The money that HSSL transmitted to the Funds was not HSSL's money; it was client money held for the client's benefit. *See* Quintus Decl. ¶¶ 9-11, 21; Decker Decl. ¶¶ 13, 18, 26-27. And the money that the Funds invested with BLMIS was – as Plaintiffs admit – the Funds' money, not that of their investors. *See* Bamberger Decl. Ex. 10 (Pls.' R&Os to HSSL's 1st RFAs) No. 72. The Funds are incorporated companies with their own legal personalities established in the BVI and are governed by BVI law in accordance with their Articles. *Id.* Nos. 31-34, 86-89.

---

[2]　　Citations to "Opp." refer to the Mem. of Law in Opposition to Def.'s Mot. to Dismiss (Dkt. 260).
[3]　　Plaintiffs submitted PPMs not produced by HSSL and that lack ████████████████████ ███████████. *Compare* Opp. Exs. 30 and 31, *with* Quintus Decl. Exs. 20 and 21.

As explained by Simon Mortimore KC, a leading BVI law expert, in his declaration
("Mortimore Decl."), purchase of the Funds' shares did not confer any ownership rights over the
Funds' property. *See* Mortimore Decl. ¶ 28 ("shareholder's…rights [do] not include an interest in
the company's property or business"). Thus, the Funds themselves, not their investors, were
treated as "Customers" of BLMIS in its liquidation. *See In re Bernard L. Madoff Inv. Sec., LLC*,
708 F.3d 422, 427 (2d Cir. 2013) (finding that Fairfield investors "individually… 'made no
purchases, transacted no business, and had no dealings whatsoever' with BLMIS.").[4]

(3)     ***Redemption payments were virtually all received at HSSL's clients' accounts at*** ▮▮▮▮▮▮▮▮ ***in London, not any account maintained by HSSL in the United States.*** HSSL
made its requests for redemptions by tendering shares to Citco Fund Services in the Netherlands,
*see Fairfield Sentry Ltd. (in Liquidation) v. Migani* [2014] UKPC 9 ¶¶ 14-16 (appeal taken from
BVI), and the redemptions were processed by Citco Fund Services abroad, Pls.' Second-Round
Appeal at 24.[5]

For virtually all of the payments at issue, when HSSL received a client instruction to
execute a redemption, payment was sent ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in
London ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮ *Id.,* Ex. 4 at ▮▮▮▮▮▮▮▮. Pursuant to that ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 10, 16. While ▮▮▮▮ chose to route
redemption payments through *its* account at ▮▮▮▮▮▮▮▮▮▮ (an entity distinct

---

[4]     Likewise, under this Court's prior rulings, the Funds themselves are treated as "Initial Transferees" for
purposes of claims under Section 550 of the Bankruptcy Code. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.
Sec. LLC*, 2021 WL 3477479 at *4 (Bankr. S.D.N.Y. Aug. 6, 2021). Plaintiffs do not assert that the Funds' separate
legal personality should be ignored, and there would be no basis to do so under BVI law. Mortimore Decl. ¶ 9(5).
[5]     The Articles provided a contractual right under BVI law to redeem shares in the Funds at the Net Asset Value
("NAV") upon the tender of shares to the Fund's Dutch administrator, Citco Fund Services (Europe) B.V. ("Citco
Fund Services" or the "Citco Administrator"). *See* Bamberger Decl. Ex. 10 (Pls.' R&Os to HSSL's 1st RFAs) Nos.
23-25, 56-58, 113-16.

from both ████ and HSSL with separate legal personality) in New York to the accounts held for
████████████ in London, neither the account in the U.S. nor the money passing through
it belonged to HSSL. *Id.* ¶¶ 10, 15-20. Notably, this is the *exact* arrangement that Plaintiffs' expert
opines is a potential way to engage in U.S. dollar transactions without entering the United States.
*See* Decl. of Sara Joyce ¶¶ 24; 39. Only in one single instance, ████████, was a redemption
routed through an account HSSL formerly held at ████ in New York. Opp. Ex. 32.[6]

With respect to Fairfield Sigma, which was Euro-denominated, HSSL received the
proceeds of redemptions into a bank account in London; they never entered the United States.
Compl. ¶ 42 & Ex. B; Bamberger Decl. Ex. 10 (Pls.' R&Os to HSSL's 1st RFAs) No. 10.

### (4)    *HSSL conducted no diligence on or related to the Funds or investments in them.*

In its non-discretionary role as custodian for clients' investments in the Funds, HSSL had no
obligation to and did not conduct any diligence on the Funds or their underlying investments.
Quintus Decl. ¶¶ 33-34. Diligence was not even within the scope of the custody department at
HSSL that handled clients' investments in the Funds. *Id.* While there was some diligence
conducted *on BLMIS* – not the Funds – this was done solely in connection with ████████
████████████████████████████████████████████████. As Plaintiffs
████████████████████████████████████████████████████
████████████████████████████████ HSSL ███████████████
████████████████. *See* Opp. at 6 (emphasis added); *see also* Decl. of Christine Coe ("Coe
Decl.") ¶¶ 16-21. Most of the diligence that Plaintiffs cite was conducted by entirely different
companies – ████████████████████████████████████████ – for
unrelated purposes. Coe Decl. ¶¶ 22-28. And none of the diligence conducted on BLMIS had any

---

[6]    Citations to "Opp. Ex." refer to the exhibits to the Declaration of Lena Konanova in Support of Liquidators'
Opposition to Defendant HSBC Securities Services (Luxembourg) SA's Mot. to Dismiss (Dkt. 261).

relation to the Funds or investments in the Funds.  *Id.* ¶¶ 16-28.

(5)    ***HSSL and its clients did not receive a "massive profit."***  Finally, Plaintiffs frame their argument in the falsehood that "HSSL was able to get out early and reap a massive profit for itself and its clients…"  Opp. at 1.  Yet their briefing confirms that HSSL's clients "███████████ ██████████████████████████████████████████████",  *id.* at 2, and received "$84 million in payments…as redemptions…," *id.* at 1 – a *loss* of over ████████[7]

## ARGUMENT

Having obtained jurisdictional discovery, Plaintiffs must make at least a *prima facie* showing of personal jurisdiction sufficient to defeat HSSL's motion.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85, 87 (2d Cir. 2013).  That showing must be "factually supported," *id.* at 85, and cannot rely on "argumentative inferences," "legal conclusion[s] couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013), or "conclusory statements without any supporting facts," *Art Assure Ltd., LLC v. Artmentum GmbH*, 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).  Personal jurisdiction is claim-specific, and the plaintiff must show that the exercise of jurisdiction is constitutional with respect to "'*each* claim asserted.'"  *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 586 (S.D.N.Y. 2017) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

## I.    HSSL's Ministerial Subscriptions To The Funds Are Not Relevant U.S. Contacts

Plaintiffs must show that their claims arise out of HSSL's sufficient "minimum contacts with the relevant forum."  *In re Terrorist Attacks*, 714 F.3d at 673 (internal quotations omitted).  This inquiry "focuse[s] on 'the relationship among the defendant, the forum, and the litigation,'"

---

[7] ████████████████████████████████████████████████████████, is irrelevant to the jurisdictional inquiry.

-6-

a relationship that "must arise out of contacts that the 'defendant *himself*' creates with the forum State," *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal citation omitted), or "relate to the defendant's contacts with the forum," *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (internal quotations omitted).  Plaintiffs fail to satisfy this inquiry.

### A. HSSL Did Not Purposefully Direct Its Conduct Toward The United States By Subscribing To The Funds Solely At The Direction And On Behalf Of Its Clients

This Court has found jurisdiction in cases where the Defendant was alleged to have deliberately and purposefully channeled money to BLMIS, with the Funds serving effectively as mere conduits for those transfers.  *See, e.g.*, Mem. Decision Denying Def.'s Mot. to Dismiss at 6-7, *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No 11-02149 (CGM) (Bankr. S.D.N.Y., June 14, 2022) (Dkt. 167) ("*Banque Syz*"); *Picard v. Bureau of Labor Insurance*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) *("BLI").*[8]  In each of those cases, the Court was focused on claims brought by the SIPC Trustee liquidating BLMIS in New York, and the Court credited allegations made without the benefit of discovery.

Those prior decisions are inapposite here because HSSL never invested in the Funds *at all*. Rather, it acted purely as a custodian facilitating *client* investments, made in the names of those clients and for their benefit.  Quintus Decl. ¶¶ 10, 20-23.  *See also, e.g.*, *id.* Ex. 13 at ███████ ███████ (stating registered shareholder name as ████████████████████).  That means that HSSL took client money, transmitted subscription agreements to the Funds on behalf of disclosed clients, received shares of the Funds listed as being held for its clients, and held those shares on the clients' behalf.  Quintus Decl. ¶¶ 11, 20-23; Decker Decl. ¶¶ 13, 18.  HSSL was not interested in whether the Funds would invest the proceeds of their share sales with BLMIS.  As

---

[8]    Following the Supreme Court's decision in *Walden*, HSSL is aware of no court, in any district, that has relied on the personal jurisdiction analysis of *BLI* or its progeny outside of the context of claims brought by the BLMIS Trustee.

one of HSSL's clients explained in a sworn discovery response: "As custodian, HSSL acted solely in a ministerial capacity with no discretion of its own or any involvement in PSL's investment decision-making process." *See* Bamberger Decl. Ex. 8 (Ans. And Objs. Of Def. Private-Space Ltd. to Pltfs.' First Set of Interrogatories) No. 7.

Plaintiffs try to cloak themselves in prior decisions that reasonably assumed – at the pre-evidentiary stage – that investors in the Funds must have intended "their" money would "ultimately" end up in New York. *See* Opp. at 15-22. They assert that by purchasing shares of the Funds, investors sought to "exploit the U.S. securities market." Opp. at 5. But that is twice wrong.

*First*, none of HSSL's money was invested with BLMIS. The money used to buy the Funds' shares was client money, not HSSL's. Quintus Decl. ¶¶ 11, 20-23; Decker Decl. ¶¶ 13, 18, 29.

*Second*, the money that the Funds invested with BLMIS (or used for other corporate purposes, like funding redemptions) was the Funds' money. Mortimore Decl. ¶¶ 30-32.[9] Plaintiffs do not and could not assert that the Funds should be disregarded on these claims – they are before the Court appearing on behalf of the Funds. *See* Compl. at 1 ("[Sentry]…and [Sigma]…by and through [Plaintiffs]… …allege the following…"). Indeed, Plaintiffs admit that the Funds are companies with identities separate and apart from their shareholders, and that any money invested with BLMIS therefore belonged to the Funds themselves and not to their investors. Bamberger Decl. Ex 10 (Pls.' R&OS to HSSL's 1st RFAs) Nos. 38, 41-42, 83-85.

As Mr. Mortimore's declaration makes clear, by purchasing shares in the Funds, HSSL did not "invest" in BLMIS; it acquired property – foreign securities – that were held entirely outside of the United States, and acquired no interest in or control over the assets of the Funds. Mortimore Decl. ¶¶ 20-32. The Second Circuit has expressly recognized as much, and that is why investors

---

[9]    Sales of the Funds shares also occurred solely abroad pursuant to SEC Regulation S, which permits sales of unregistered securities exclusively in the foreign markets and not to U.S. investors. *See* Opp. Ex. 30 at 2 (▮▮▮▮▮▮▮); Opp. Ex. 31 at 1 (▮▮▮▮▮▮▮).

in the Funds were denied standing as customers of BLMIS under SIPA. *In re Bernard L. Madoff*, 708 F.3d at 426-7 (" [] fund customers: '(1) had no direct financial relationship with BLMIS, (2) had no property interest in the assets that the Feeder Funds invested with BLMIS, (3) had no securities accounts with BLMIS, (4) lacked control over the [] Funds' investments with BLMIS, and (5) were not identified or otherwise reflected in BLMIS's books and records.").

It is black letter law that a foreign company does not become subject to jurisdiction in the United States simply by acquiring stock in a company that engages in activities here. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) ("[T]he presence of the subsidiary alone does not establish the parent's presence in the state.").[10]  Plaintiffs cite nothing to the contrary, and neither invoke nor seek to satisfy the Second Circuit's test for jurisdictional veil piercing. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-121 (2d Cir.1984). Plaintiffs posit that when HSSL paid client money to purchase Fund shares, it must have known "that money" would be invested with BLMIS. Opp. at 15. That is both false and irrelevant. It is false because the Funds were free to use money raised through sales of shares for any legal corporate purpose – such as paying redeeming shareholders. Mortimore Decl. ¶¶ 33-36. In fact, the Funds used subscription money to pay other investors. *See* Bamberger Decl. Ex. 6 (Consent Order) ¶ 42 ("The redemptions and subscriptions were typically netted out, so the bulk of the outflows from redemptions never had to be transferred out of [BLMIS]"). It is also irrelevant because, even if HSSL knew the Funds would use the money raised through sales of shares to invest in the United States, the law is clear that the foreseeability of the *plaintiff's* contact with the forum is irrelevant. *See, e.g.,* *Walden*¸ 571 U.S. at 289 (rejecting foreseeability of plaintiff's

---

[10]    *See also In re Ski Train Fire in Kaprun, Austria*, 342 F. Supp. 2d 207, 214-15 (S.D.N.Y. 2004) ("[E]ven a wholly owned subsidiary is presumed to be a separate entity in the absence of "clear evidence" that it is controlled by the parent."); *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 549 (S.D.N.Y. 2001) ("The mere presence of a subsidiary in New York does not establish the parent's presence in the state.").

contact with the forum as basis for personal jurisdiction); *J. McIntyre*, 564 U.S. at 882 ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum…").

Finally, Plaintiffs point to vague, limited contacts between ████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████    *See* Opp. at 8 ("███████████████████████████████████████████ ██████████; *id.* at 16 (stating PPMs were "provided to [HSSL] by FGG"); *id.* at 17 ("the defendant communicated with FGG employees in New York."); *id.* at 3 ("signed █ subscription agreements subjecting it to the laws and jurisdiction of New York"). Notably, Plaintiffs point to *no evidence* to support their allegations that HSSL communicated with or received anything from FGG employees in New York (the evidence shows HSSL communicating with ████████████████ ████████████████████████████████[11]), and where █████████████████████ is obviously not a U.S. jurisdictional contact. Even if it turns out there were some communications with people who happened to be in New York, responding to correspondence or telephone calls in Europe about investments in a BVI company is not jurisdictionally-relevant. *See Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) ("The communication and transmission of information to and from [BLMIS] in connection with fund administration and custodial duties do not give rise to personal jurisdiction."); *Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 2017 WL 1113080, at *3-4 (S.D.N.Y. Mar. 10, 2017) ("that electronic communications were routed through U.S.-wires or servers, or that recipients of those communications were located in the United States," was "insufficient to establish minimum contacts with the United States").

As for the subscription agreements, HSSL's agreement to litigate in New York under New York law issues related to the subscription itself – presumably, administrative disputes given its

---

[11]    *See* Bamberger Decl. Ex. 11 (███████████████████████████████).

limited role – could in no way have made it foreseeable that HSSL would be subject to suit here on BVI-law governed intra-corporate claims relating to its clients' redemptions from the Funds. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 334 (2d Cir. 2005) (recognizing "a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action"). In any event, multiple courts in the U.S. and abroad have found that Plaintiffs' claims do not arise from the Subscription Agreements.[12]

### B. Due Diligence Unrelated To The Funds Or Investments In Them Is Irrelevant To Jurisdiction Over These Claims

Plaintiffs contend that diligence conducted on BLMIS by HSSL or ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ related to "[HSSL's] decision to subscribe in the Funds." *See, e.g.*, Opp. at 32. This Court has previously relied on allegations that defendants conducted diligence in the United States on relevant investments as *a* factor in finding personal jurisdiction. *See, e.g.*, *Picard v. Banque Lombard Odier & Cie SA*, 2022 WL 2387523, at *3 (Bankr. S.D.N.Y. June 30, 2022). But the common thread in those cases has been an allegation that the diligence was done *by the Defendant in relation to the investments at issue. See id.*

Here, the evidence is again to the contrary. There is *not one single reference to the Funds* in any of the documents upon which Plaintiffs' rely. Coe Decl. at 11-16. *See also, e.g.*, Opp. Ex. 7 at 194:8-13, 195:12-13, 203:14 (discussion regarding Thema and Primeo); Opp. Ex. 8 at 31:12, 32:23-24, 94:2-4 (discussion of documents relating to Thema); Opp. Ex. 9 at 180:3-5 (discussion relating to Primeo). The only diligence that Plaintiffs identified that was done by HSSL was done *on BLMIS*, not the Funds, and related ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[12]        *See, e.g.*, *Fairfield Sentry Ltd. (In Liquidation) v. Citibank, N.A. London,* 2022 WL 4391023, at *12 (S.D.N.Y. Sept. 22, 2022) ("I reject [Plaintiffs'] argument that their claims are 'with respect to the Subscription Agreement' because the Subscription Agreement was the 'basis of the contractual relationship' between the investors and the Funds."); *Fairfield Sentry Ltd. (in Liquidation) v. Migani* [2014] UKPC 9 ¶ 10 ("[W]hat matters is not the subscriber's acknowledgements, representations and warranties, nor the factual statements of the Fund, but the terms of the subscriber's membership of the Fund, which govern the redemption of its shares.").

█████████████████████████████████████████ Coe Decl. ¶¶ 16-21, 29.  Plaintiffs' briefing

tacitly acknowledges the irrelevance of this diligence.  *See* Opp. at 6 ("…HSSL executive Nigel

Fielding met with Madoff in his New York office ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████) (emphasis added).

As for diligence done by █████ that is even further afield.  For one, ████████████

███████████.  Coe Decl. ¶¶ 4, 30-32.  It was also not performed by HSSL at all – it was done

by entirely different legal entities, ████████████████████████████████████████

████[13]  *Id.* ¶¶ 22-27.  This diligence was done because ██████████████████████████

████████████████████.  *Id.* ¶¶ 22-28, 30-32.  Accordingly, as this diligence

had no relation to the investments at issue here, it cannot support the exercise of jurisdiction over

HSSL.  *Bristol-Myers Squibb Co. v. Superior Ct. of Ca.*, 137 S. Ct. 1773, 1780 (2017) ("When

there is no such connection [between the forum and the underlying controversy], specific

jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.");

*SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d

Cir. 2018) (rejecting jurisdictional relevance of defendant's contacts with New York when the

plaintiff had not relied on those contacts in deciding to invest in BLMIS).

Plaintiffs' conclusion that these diligence activities "contributed to [HSSL's] knowledge

that the NAVs were inaccurate" is a self-serving conclusion, not evidence – and an irrelevant

conclusion at that.  *See* Opp. at 34.  Nothing in the information obtained about BLMIS ████

████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████.  Coe Decl. ¶

---

[13]      Plaintiffs claim that ████████████████████████████████████████████████
██████████████████████████ Coe Decl. ¶ 14.

25; *Id.* Ex. A at ████████ and ████████ (████████) (████████ ████████████████████████████████████████). Thus, even if HSSL had received that information, and connected the dots to client investments in the Funds (and there is no evidence it did), there is no reason to believe that it would have led HSSL to believe that it could not execute a client instruction to redeem shares in the Funds. Moreover, the diligence performed by ████ had nothing to do with the Funds, their NAVs, Citco's calculation of their NAVs, nor even the services that HSSL provided to its clients that invested in the Funds, Coe Decl. ¶¶ 29-33; Quintus Decl. ¶¶ 32-33, and Plaintiffs cite no reason to believe that HSSL would have expected to be sued here based on diligence of different investments for a different purpose.

### C. As Plaintiffs' Own Expert Opines, The Receipt Of U.S. Dollar Payments Abroad Is Not A Relevant U.S. Contact

With respect to Plaintiffs' arguments regarding use of correspondent accounts, the Court must look at each transfer separately. *See Sonterra*, 277 F. Supp. 3d at 586. For HSSL: (1) for all but one of the redemptions at issue, HSSL did not use any U.S.-based correspondent account *at all*, and (2) one transfer went through a New York-based ████ correspondent account. *See* Decker Decl. ¶¶ 26-31.

For the first category, HSSL did not use a U.S. correspondent account; it used accounts held for client funds at ████ in London. Decker Decl. ¶¶ 18-20, 26-27, 29-30. As described in Plaintiffs' own expert's declaration, this "correspondent bank transfer approach" is one of the ways in which a foreign bank can transact in U.S. dollars without entering the U.S. Decl. of Sara Joyce ¶¶ 24(b)-(c), 39. Under this approach, redemption payments are sent from Sentry's U.S. account to a foreign correspondent account, by way of the "*foreign correspondent bank's* own correspondent bank network in the U.S.*" *Id.* ¶ 39 (emphasis in original).

That is exactly what happened here. HSSL did not use an account in the United States to

-13-

receive the payments.    Rather, pursuant to HSSL's agreement appointing ███████
███████████ selected the correspondent account that would be used to facilitate U.S.

dollar transactions.  *See* Decker Decl. ¶¶ 20, 26.  When one of HSSL's clients instructed it to

redeem shares in Sentry, HSSL tendered the shares to Citco Fund Services in the Netherlands and

indicated that funds should be sent to an account at ███ via █████ account at ███ *See id.*

¶¶ 19-20, 30; Decl. of Shqipron Cami ("<u>Cami Decl.</u>") ¶ 2 (stating that the relevant HBUS account

was held by ████ not HSSL).  The redemption payments thus traveled from Citco Fund Services

in Ireland to an ████ account held for the benefit of HSSL's clients by way of ████ *Fairfield*

*Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2020 WL 7345988, at *6

(Bankr. S.D.N.Y. Dec. 14, 2020) (finding all redemption payments were made by the Dublin

Branch of Citco Bank); Decker Decl. ¶¶ 18-19, 30.  This money never reached HSSL, much less

landed in any U.S. account belonging to HSSL.  Decker Decl. ¶¶ 18, 20, 26-27, 30.

That accounts for all but one of the transfers at issue.  One redemption payment – of

██████████████ – does appear have been sent to HSSL in Luxembourg through an

account it held at ██████ in New York.  *See* Opp. Ex. 32.  That transaction cannot establish

personal jurisdiction for claims related to *other* redemption payments.  *See Sonterra*, 277 F. Supp.

3d at 586.  But even on its own terms, the momentary transfer of funds through a U.S. account on

its way from Ireland to Luxembourg is not a sufficient basis to exercise jurisdiction over a foreign-

law intra-corporate claim unrelated to the use of the U.S. account itself.

Foreigners routinely travel on U.S. airlines, change planes at U.S. airports,[14] send emails

that transit U.S.-based servers,[15] and communicate over U.S.-based social media platforms.  And

---

[14]    Courts have recognized that doing so would not support personal jurisdiction. *See American Estates
Wines, Inc. v. Kreglinger Wine Estates Pty, Ltd., et al.*, 2008 WL 819993, at *4 (D.N.J. Mar. 25, 2008); *Scott v.
Breeland*, 792 F.2d 925, 927-28 (9th Cir. 1986).
[15]    70% of the world's internet traffic, for example, travels through servers in Northern Virginia. *See* Bamberger
Decl. Ex. 12.

when international transactions are conducted in the leading global reserve currency – the U.S. dollar – those transactions almost invariably involve transfers of funds that at some point or another touch the U.S. banking system.  Expert Declaration of Vance S. Price ("Price Decl.")  ¶¶ 6-14, 52-69.  Courts have recognized that when the "principal wrong" in a legal case *is* the use of the U.S. banking system, the deliberate use itself may be an appropriate hook for specific personal jurisdiction.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170-71 (2d Cir. 2013) ("[A] lawsuit seeking redress for the allegedly unlawful provision of banking services.").  But where the principal wrong is something else, and the momentary transfer of funds through the U.S. banking system is not the crux of the claim, courts uniformly recognize that the exercise of personal jurisdiction based on such a "random, fortuitous, or attenuated contact[]," *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150-51 (2d Cir. 2019), would be incompatible with due process, *see infra* at 18-20.

The U.S. dollar is the common currency of exchange in the global economy, accounting for more than 60% of international foreign currency claims and liabilities, Bamberger Decl. Ex. 2 at 6; *see also* Bamberger Decl. Exs. 1 and 5, and virtually all international commerce in dollars is conducted through a payment process that settles in the United States.  Price Decl. ¶ 26.  A foreign party would not reasonably expect to be sued in the United States by another foreign party in relation to a foreign transaction merely because funds relevant to that transaction happened to route through a U.S. correspondent account.  *See* Bamberger Decl. Ex. 4 at *28 ("[T]he automated domestic clearance of dollar-denominated transactions in isolation does not in itself constitute a sufficient domestic nexus for recognizing a common-law claim.").  Plaintiffs argue and submit a declaration claiming that payments to or from Sentry could in theory have been accomplished without using the U.S. banking system.  Opp. at 9-10, 24-25 (citing Joyce Decl.).  But a closer examination shows that they largely reach that conclusion only by ignoring parts of the relevant

-15-

transactions in their hypotheticals. *See* Price Decl. ¶¶ 6-14, 52-69.

More to the point, however, Plaintiffs assume – wrongly – that HSSL actually made a deliberate decision to clear this payment in a particular way. To the contrary, the evidence shows that the transfer of funds here was unremarkable: money was routed from Sentry's bank in Europe (Citco) to HSSL in Luxembourg, and because that money was U.S. dollars, it – like virtually every other significant dollar payment in the world – momentarily transited through the U.S. banking system. *Id.* Finding jurisdiction over foreign transactions solely because the funds at issue momentarily transited the United States would effectively establish general jurisdiction in the United States for any global transaction that is conducted in U.S. dollars, which Courts have emphatically rejected.[16] *Abelesz v. OTP Bank*, 692 F.3d 638, 657–58 (7th Cir. 2012) ("[M]any courts have soundly rejected the suggestion that a correspondent banking relationship with a bank in the forum is sufficient to support general jurisdiction over a foreign defendant."); *see also Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 23 N.Y.3d 129, 137 (2014) ("Our state's interest in the integrity of its banks…is not significantly threatened every time one foreign national…moves dollars through a bank in New York.").

The question here is not whether HSSL could be sued for *anything* in relation to a transfer through such an account. Had it provided "unlawful banking services," engaged in money laundering, terrorism financing, or some other act by which the U.S. transfer itself was the "principal wrong," it probably would be subject to jurisdiction here. *See Licci*, 732 F.3d at 170-71 (finding intentional use of a correspondent account to fund terrorist activities in violation of

---

[16]    Plaintiffs' formulation of the rule would extend U.S. jurisdiction to almost any commercial dispute involving U.S. dollars. While Plaintiffs argue that, here, "HSSL's use of U.S. accounts is sufficiently related to the Liquidators' claims seeking to recover Sentry redemption payments," Opp. at 30, the payment or non-payment of funds is virtually always an element of a commercial claim – it does not necessarily follow that the claim itself arises out of or relates to the mechanism of payment.

-16-

antiterrorism laws was "principal wrong"); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 338 (2016) (finding intentional use of a correspondent account to launder money and pay bribes were the relevant "wrongs"); *infra* n.19-22.  But no foreign bank should reasonably expect to be sued in New York on a *client's* foreign commercial disputes solely because it permitted foreign clients to access the global U.S. dollar payment system.  *See Daewoo Int'l (Am.) Corp. v. Orion Eng'g & Serv., Inc.*, 2003 WL 22400198, at *2 (S.D.N.Y. Oct. 20, 2003) (no U.S. jurisdiction where foreign defendants used U.S. accounts to disperse a loan and collect interest payments pursuant to a contract negotiated abroad).

The Second Circuit's holding in *Hau Yin To* that HSSL's use of a correspondent account to facilitate investments with BLMIS was not a relevant jurisdictional contact, is directly on point. 700 F. App'x at 66-67.  Plaintiffs argue that *To* is distinguishable because the "defendants" were "not investors in any feeder fund."  Opp. at 27-28.  But that is irrelevant:  the *plaintiff* in *To* was an investor in a feeder fund who argued, as Plaintiffs do here, that their money was "transmitted … to and from BLMIS" by foreign HSBC entities (including HSSL) and that their losses arose from those transfers.[17]  The Circuit rejected that argument, holding that by merely transferring money through a U.S. account HSSL had not "project[ed] [itself] into [the] state to engage in a sustained and substantial transaction of business."  *To*, 700 F. App'x at 67.[18]

Our research finds that *no* court in this Circuit has *ever* found that mere use of a U.S. correspondent account to momentarily facilitate a single transfer of funds between foreign parties, such as what HSSL did here, could subject a foreign party to U.S. personal jurisdiction on a foreign

---

[17]     *See* Bamberger Decl. Ex. 13 (Hau Yin To Reply Brief).

[18]     Here, Plaintiffs have made crystal clear that the money they are trying to recover is not in New York.  Their claim is not that money was sent through the U.S. banking system.  Their claim is that money from the Funds' accounts in Ireland ended up in accounts held by HSSL or its clients in Luxembourg or London.  *See* Compl. Exs. A & B (stating redemption payments were made to accounts in Luxembourg and London).  As Plaintiffs represented to the District Court, "***every relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States***."  Pls.' Second-Round Appeal at 24.

law claim. Rather, courts have looked to correspondent account use to find jurisdiction in cases where the account use *itself* was the issue: terrorism financing cases against banks,[19] money laundering cases,[20] cases involving subpoenas for banking records,[21] and cases in which accounts were used to facilitate a U.S. investment scheme.[22] *In re: Arcapita Bank B.S.C.(C)*, 640 B.R. 604 (S.D.N.Y. 2022) – which is currently on appeal – appears to be the only exception. But even there, the claims at issue involved use of a U.S. account to facilitate an investment scheme in which the bank itself was a beneficial participant, and the claims at issue were brought under U.S. law in connection with a U.S. bankruptcy. These claims are different: they are foreign law claims related to a client's controversy that is entirely foreign. Unlike in *Licci* or virtually any of the other cases at issue, no element of Plaintiffs' claims rely on use of a bank account or the banking system, much less the U.S. banking system. This is evidenced by the fact that they assert the same claims with respect to Sigma transfers that never touched the United States. *See infra* at 20. Indeed, Plaintiffs admit that they could have sued HSSL in the BVI but chose not to do so because the BVI courts had effectively repudiated their claims. *See* Opp. at 39; Dfs.'Opening Br. at 22.

## II.    The Exercise Of Personal Jurisdiction Over HSSL Would Be Unreasonable

For all of the reasons set out above, Plaintiffs cannot show that HSSL has sufficient minimum contacts with the United States related to the BVI-law claim they are asserting for personal jurisdiction to be constitutional. Even if they were able to edge over the line, however, it

---

[19]    *Licci*, 732 F.3d. 161; *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264 (E.D.N.Y. 2016); *Peterson v. Iran*, 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013); *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019); *Bartlett v. Societe Generale de Banque Au Liban SAL*, 2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020); *Freeman v. HSBC Holdings PLC*, 2021 WL 76925 (E.D.N.Y. Jan. 7, 2021); *Schansman v. Sberbank*, 565 F. Supp. 3d 405 (S.D.N.Y. 2021); *Averbach v. Cairo Amman Bank*, 2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022); *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3 (E.D.N.Y. 2016).
[20]    *Dale v. Banque SCS All. S.A.*, 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016).
[21]    *Gucci Am. Inc.  v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 330 (S.D.N.Y. 2018).
[22]    *Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374 (S.D.N.Y. 2013); *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55 (S.D.N.Y. 2021).

is clear that the exercise of personal jurisdiction in this case would not be reasonable. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) ("[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction."); *Porina v. Marward Shipping Co.*, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show that jurisdiction over the defendant is proper."). In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must consider the burden on defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Ct. of Ca.*, 480 U.S. 102, 113 (1987).

*First*, the interests of the United States in this dispute are, at best, minimal. This is an "ancillary" Chapter 15 case in which the Court is acting "to aid foreign jurisdictions in administering bankruptcies by preventing debtors from squirreling away assets in the United States." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 686 (S.D.N.Y. 2011). "Here, there are no assets in the United States" and accordingly "the ancillary character of the Chapter 15 cases here is at a low ebb." *Id.* at 682. The dispute arises purely under foreign law, and is effectively an internal dispute between a BVI company and its shareholders, a situation in which the courts have long held the parties' reasonable expectations look to the state of incorporation to provide predictability. *See First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) (the internal affairs doctrine "achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation."). None of the parties are domestic, and even the non-party, non-redeeming shareholders of the Funds who might ultimately benefit from a recovery are, necessarily, foreign.

-19-

*See supra*, n.9 (Reg S).[23]

*Second*, Plaintiffs have no reasonable interest in having this dispute adjudicated here. Unlike domestic plaintiffs, or trustees of U.S. bankruptcies, Plaintiffs have forum shopped their claims to New York due to a mistake of law on their parts and adverse decisions in the courts where these claims should most naturally be heard: the BVI.  Def.'s Opening Br. at 22.  "[T]he cases under the same legal theories could have been (and were) brought in the BVI proceedings." *In re Fairfield Sentry*, 458 B.R. at 686.  Plaintiffs' attempt to distinguish *Ford Motor Co.*, 141 S. Ct. at 1031, and *Bristol-Myers*, 137 S. Ct. at 1773, is unavailing.  Just like in *Bristol-Myers*, Plaintiffs are not U.S. residents, they did not send the redemptions at issue from the United States, and the *actual alleged injury upon which they have sued* did not occur in the United States.

*Third*, the burden on HSSL and its employees of litigating in this forum is significant.  The witnesses and evidence in this action are all overseas, and merits discovery would probably expose HSSL to civil and criminal liability under foreign secrecy and privacy laws.  *See* Bench Ruling Granting in Part and Den. in Part the Foreign Representatives Mot. Seeking Limited Relief (Dkt. 799-2) ("The various respondents have described…the strong and undeniable interest of many nations in enforcing their banking secrecy laws.").

## III.    Plaintiffs' Claim For A Single Sigma Redemption Should Be Dismissed

Plaintiffs' claim concerning one redemption from Sigma fails for all of the reasons set out above, and because that transfer did not touch the United States at all – it was transferred in Euros through London.  Bamberger Decl. Ex. 10 (Pls.' R&Os to HSSL's 1st RFAs) Nos. 101-2, 108-11, 120; Compl. ¶ 42 & Ex. B; Opp. Ex. 32; Opp. at 24 n.25.

---

[23]    Plaintiffs rely on *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 31 (E.D.N.Y. 2016) to attempt to articulate an interest of the United States, but the claims in that case were based on the U.S. Anti-Terrorism Act and alleged violations of U.S law.  Here, Plaintiffs have expressly *disclaimed* that U.S. law even applies to the transfers at issue.  *See* Appellants' Br. at 73, *In re: Fairfield Sentry Ltd.*, No. 22-2101 (2d Cir.) (Dkt. 227) (stating claims and transfers are foreign).

Dated: March 15, 2023
      New York, NY

Respectfully submitted,

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By:  */s/ Nowell D. Bamberger*

Jeffrey A. Rosenthal
Joseph M. Kay
David Z. Schwartz
JD Colavecchio
Thomas Q. Lynch
One Liberty Plaza
New York, NY 10006
T: 212-225-2000
F: 212-225-3999
jrosenthal@cgsh.com
jkay@cgsh.com
dschwartz@cgsh.com
jdcolavecchio@cgsh.com
tlynch@cgsh.com

Nowell D. Bamberger
2112 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
T: 202-974-1500
F: 202-974-1999
nbamberger@cgsh.com

*Counsel for Defendant HSBC Securities
Services (Luxembourg) S.A.*

-21-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2023, I filed the foregoing document and

accompanying declarations and exhibits in unredacted form via USB to the Court and caused it

to be served electronically via email to the participants identified below:

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
delsberg@selendygay.com
mginzburg@selendygay.com
jgoldstein@selendygay.com
lkonanova@selendygay.com
dflugman@selendygay.com
jmargolin@selendygay.com

-and-

BROWN RUDNICK LLP
David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for the Plaintiffs Joint Liquidators*

GILMARTIN, POSTER & SHAFTO LLP
Michael C. Lambert
845 Third Avenue, 17th Floor
New York, NY 10022
Telephone: 212-425-3220
mclambert@lawpost-nyc.com
*Attorney for Defendant Private-Space Ltd.*

           */s/ Nowell D. Bamberger*
           Nowell D. Bamberger