UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No. 10-13164 (JPM) |
| Debtors in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LIMITED (IN LIQUIDATION), et al., | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 10-03630 (JPM) |
| HSBC SECURITIES SERVICES (LUXEMBOURG) SA, et al., | |
| Defendants. | |

**SUR-REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LIQUIDATORS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: June 30, 2023

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ..........................................................................................................................1

I.      HSSL's U.S. Correspondent Account Use Supports Jurisdiction ........................................1

        A.     Newly Cited Role of ▮▮▮▮ Only Highlights HSSL's Own Deliberate
             Role in Use of U.S. Correspondent Account. ...........................................................1

        B.     HSSL's Newly Submitted Price Declaration Only Underscores Volitional
             Nature of U.S. Correspondent Account Use. ............................................................3

II.     HSSL's Newly Cited Evidence Does Not Show Diligence on Madoff to be Irrelevant. ....5

III.    HSSL's "Execution-Only" Argument Only Underscores HSSL's Purposeful Availment
       of the Forum. .....................................................................................................................6

CONCLUSION .......................................................................................................................9

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AXA Versicherung AG v. New Hampshire Ins. Co.*,
   391 F. App'x 25 (2d Cir. 2010) ...................................................................................9

*Caloric Stove Corp. v. Chemical Bank & Trust Co.*,
   205 F.2d 492 (2d Cir. 1953) (L.Hand, J.) ...................................................................9

*Consolidated Edison Co. of New York v. U.S.*,
   221 F.3d 364 (2d Cir. 2000) ........................................................................................9

*Jazini v. Nissan Motor Co., Ltd.*,
   148 F.3d 181 (2d Cir. 1998) ......................................................................................10

*Picard v. Barfield Nominees Ltd.* (*In re Bernard L. Madoff*),
   2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022) ................................................7

*Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*),
   2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ................................................7

*Picard v. Maxam Absolute Return Fund, L.P.*,
   460 B.R. 106 (Bankr. S.D.N.Y. 2011) ........................................................................7

*Skandinaviska Enskilda Banken AB (Publ) v. Conway*,
   [2019] UKPC 36 ..........................................................................................................9

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
   751 F.2d 117 (2d Cir. 1984) ......................................................................................10

## PRELIMINARY STATEMENT

In their Opposition, the Liquidators demonstrated with extensive factual support that HSBC Securities Services (Luxembourg) S.A. ("HSSL") had ample claim-related contacts with the forum for the Court to exercise personal jurisdiction, including HSSL's purposeful investment in Madoff feeder funds; HSSL's use of U.S. correspondent accounts to receive overpaid redemption monies here at issue; and HSSL's Fund and BLMIS-related diligence. On reply, HSSL argues for the first time that (i) HSSL's U.S. account use is insufficient in light of newly cited discovery and a newly submitted expert declaration; (ii) BLMIS diligence was purportedly irrelevant, in light of newly cited discovery; and (iii) HSSL purportedly was only executing trades on behalf of customers. These belated new arguments go nowhere.

## ARGUMENT

I.  **HSSL's U.S. Correspondent Account Use Supports Jurisdiction.**

   A.  **Newly Cited Role of ▮▮▮ Only Highlights HSSL's Own Deliberate Role in Use of U.S. Correspondent Account.**

Citing new discovery on reply, HSSL argues that for all but one redemption, HSSL "did not use any U.S.-based correspondent account *at all*." Reply at 13. HSSL explains that pursuant to an agreement between HSSL and ▮▮▮ to which the Liquidators are not party, HSSL directed redemption payments to ▮▮▮, and ▮▮▮ chose to route redemption payments through ▮▮▮ U.S. account at ▮▮▮. *Id.* at 13-14. But this selective re-telling only serves to highlight HSSL's own role, once the facts omitted by HSSL are added back in.

What HSSL's account omits, first of all, is that it was HSSL itself, not ▮▮▮, that wrote into the Subscription Agreements (and other subscription and redemption documents) the U.S.

correspondent account where it chose to receive its payments from Sentry. *See* Ex. 1[1]; Ex. 3 at -667; Ex. 32 at -334-35; Ex. 33 at -364; *see also* Decker Decl. (Dkt. 278) at ¶ 27. And even as to ▇▇▇ role, HSSL ▇▇▇▇▇▇▇▇▇▇▇ with respect to subscription and redemption payments routed through ▇▇▇: under an agreement between HSSL and ▇▇▇, use of a U.S. correspondent account by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Decker Decl. at ¶ 23(c), Decker Ex. 4 § 9.1.[2]

Indeed, HSSL's purposeful conduct becomes all the more clear when HSSL strains in its Reply to shoehorn the facts here into one of the categories the Liquidators' expert identified as alternatives to using U.S. correspondent banks—namely, the "correspondent bank transfer approach," under which an account at a *foreign* correspondent bank is designated to process the transfer. *See* Joyce Decl. (Dkt. 262) ¶¶ 24, 39. As Joyce explained by way of example, "if a respondent with a correspondent account at TD Bank had a customer who was redeeming shares in Fairfield Sentry, the wire payment instructions would have been to credit the respondent's correspondent account at TD Bank in Toronto directly, for further credit to the customer." Joyce Decl. ¶ 25(b).

Unlike in the example noted by Joyce, here HSSL did not designate a correspondent account at a foreign bank (such as an account at ▇▇▇▇▇▇▇▇) in the Subscription Agreements to receive payment: to the contrary, HSSL wrote into the Subscription Agreements a U.S.

---

[1] Unless indicated otherwise, all exhibits referenced herein refer to those attached to the Declaration of Lena Konanova (Dkt. 261) filed with the Liquidators' Opposition (Dkt. 260).

[2] To the extent there is any confusion about whether the redemption payments were paid directly to HSSL's client's accounts at ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Decker Decl. at ¶ 19 n. 1.

2

correspondent account, specifically ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[3] *See e.g.* Ex. 3 at -667; Ex. 78 at -353; Supplemental Declaration of Sara Joyce ("Joyce Suppl. Decl.") ¶ 3.

Ultimately, HSSL does not dispute that HSSL directed payments be made to a U.S. correspondent account by writing that account into the Subscription Agreements and admits that redemption payments were in fact repeatedly processed through that U.S. account, *see* Reply at 14; Decker Decl., ¶ 30.[4] Because that repeated and volitional use of a U.S. account relates directly to the claims, it supports jurisdiction here. *See* Opp. at 23-30 and *infra* at II.B.

**B.    HSSL's Newly Submitted Price Declaration Only Underscores Volitional Nature of U.S. Correspondent Account Use.**

With a newly submitted declaration of Vance Price, HSSL also takes a different tack, attempting to show HSSL had no choice but to use a U.S. correspondent bank for its Sentry investments and redemptions. *See* Reply at 15-16. But rather than showing there was no choice, Price ends up highlighting reasons to *make* a choice of U.S. correspondent banks over alternative methods for processing U.S. dollar transactions.

As the Liquidators' correspondent bank expert Sara Joyce explained, there were other options for offshore U.S. dollar transaction clearing. Joyce Decl. § E. Rather than disputing this, Price asserts that the two methods described by Joyce are not common (Price Decl. (Dkt. 280) ¶¶ 14, 31)—which Joyce does not discount (noting that "factors of convenience, cost and country risk

---

[3] Though Decker states in his Declaration that the ▓▓▓▓▓▓ notation on one of the redemption requests was "an instruction for Sentry's custodian, Citco Bank Nederland B.V., Dublin Branch, to send an international transfer from its accounts in Ireland to the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" (Decker Decl. ¶ 30), that does not mean that the funds were not sent through ▓▓▓▓▓ U.S. correspondent account at ▓▓▓▓. HSSL admits, and the subscription agreements and redemption wire transfer instructions filled out by HSSL show, that HSSL directed the Funds to send the payments to ▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. 3 at -667; Ex. 33 at -367; *see also* Decker Decl. at ¶ 27.

[4] HSSL also does not dispute that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Opp. at 25.

3

may have caused a foreign subscriber to choose to use a U.S.-based correspondent") (Joyce Decl. ¶ 10(c)).

Price goes on to explain that regulators would expect the use of U.S.-based correspondent banks (rather than alternate offshore arrangements) for concrete reasons: for example, to avoid credit and operational risk, such as money laundering or terrorism-related risks (Price Decl. ¶¶ 8, 12, 62). But these are reasons to make a choice of U.S. banks, not reasons that no such choice exists; regulators would need not encourage U.S. bank use if such use was mandated.

Moreover, it is the very benefits offered by the U.S. banking regulatory system that factor among the reasons institutions choose to use such banks, as both sides appear to agree. *See* Price Decl. ¶¶ 12, 32, 62-65; Joyce Suppl. Decl. ¶ 4. Having chosen to take advantage of the benefits of U.S. regulated banks to execute their wrongful transactions, HSSL can hardly complain of being haled into U.S. courts to answer for it.

Nor can HSSL avoid this conclusion by attempting to rewrite the Liquidators' constructive trust claims. HSSL dwells repeatedly in its Reply on the purported import of a breach of duty, *see* Reply at 1, 16-18, attempting to obscure the constructive trust claim this Court (Bernstein, J.) actually permitted to go forward: receipt of overpaid redemption monies with knowledge the NAV was inflated.[5] With the claim seen as it actually is, the centrality of the use of U.S. accounts is obvious: the accounts were the means by which HSSL affirmatively chose to receive the overpaid redemption monies targeted here. *See* Opp. at 23-31.

---

[5] By failing to argue in their January 2017 motions to dismiss that the constructive trust claims should be dismissed for purported lack of pleading a breach of duty, *see* Dkt. 48, 49, HSSL waived any contention that such breach must be pled. Even aside from that waiver, there is no deficiency in how the Liquidators pled the constructive trust claim, but that is an issue to be addressed in the final round of motion to dismiss briefing. Dkt. 179.

4

II.     **HSSL's Newly Cited Evidence Does Not Show Diligence on Madoff to be Irrelevant.**

Citing new evidence on Reply, HSSL also argues that diligence cited by the Liquidators is irrelevant because it focuses on BLMIS but not the Funds, and purportedly was conducted by ▉▉▉▉▉▉▉▉▉▉▉▉. *See* Reply 11-13. While hardly a dispositive matter given the ample other evidence submitted by the Liquidators, this belated argument, too, is unavailing.

*First*, it is not correct that a focus on BLMIS rather than Fairfield renders the diligence irrelevant. New York-directed diligence on BLMIS confirms that HSSL knew that BLMIS (in which HSSL indirectly invested) is in New York, but more than that, it is relevant to the "knowledge" element of the Liquidators' claims: as the Funds were Madoff feeder funds, knowing BLMIS was a fraud would provide a basis to know the NAV certified by Citco (on which redemptions were calculated) was inflated. *See* Opp. at 32-34. Thus, while diligence on Fairfield itself is relevant (*see, e.g., Picard v. Barfield Nominees Ltd.* (*In re Bernard L. Madoff*) ("*Barfield*"), 2022 WL 4542915, at *3 (Bankr. S.D.N.Y. Sept. 28, 2022))—and HSSL acknowledges reading, *inter alia*, the Funds' PPMs—diligence concerning BLMIS itself is also relevant to the claims and constitutes additional evidence supporting jurisdiction. *See, e.g., Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*) ("*Cathay Life Ins.*"), 2022 WL 16626325, at *3 (Bankr. S.D.N.Y. Nov. 1, 2022).[6]

---

[6] HSSL also submits the self-serving declaration of Christine Coe in support of the assertion that "[n]othing in the information obtained about BLMIS ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" Reply at 12 (citing Coe Decl. (Dkt. 277), ¶ 25). But the Liquidators are not required for personal jurisdiction to prove the level of HSSL's knowledge (a matter for further stages in the case), only that there is evidence of a New York contact in the form of New York-directed diligence that relates to the claims here. *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011). They have done so. More broadly with respect to Coe's declaration, Coe does not claim to have been employed by HSSL during the relevant period and cannot credibly offer direct factual knowledge of all diligence that all HSSL personnel participated in or viewed (or each HSSL employee's understanding of that

5

*Second*, though HSSL asserts that diligence conducted by ▇ is irrelevant (*see* Reply at 12), discovery shows that HSSL was directly involved in and had knowledge of the BLMIS diligence conducted by ▇ concerning the operations of BLMIS, as the Liquidators already have demonstrated. *See* Opp. at 5-8, 32-33. Indeed, ▇ ▇ Ex. 8 at 126:23-127:9 (transcript noting e-mail sent by Germain Birgen (HSSL) to Nigel Fielding (HSSL) regarding meeting with Ernst & Young about transparency issues with Madoff); Ex. 9 at 184:16-185:17 (transcript noting 2005 e-mail copying Mr. Birgen to Paul Smith regarding concerns about Madoff operations); Ex. 35 at -937 (▇).

### III. HSSL's "Execution-Only" Argument Only Underscores HSSL's Purposeful Availment of the Forum.

HSSL argues its investment in Fairfield Funds is not a relevant jurisdictional contact, because HSSL was merely executing investments for clients. *See* Reply at 1-3, 6-11. But HSSL agreed, as a condition of investment, that the Funds could treat HSSL itself as absolute owner of the shares, even if HSSL was acting for customers. Specifically, Article 8 of the Funds' Articles provides that the Funds "shall be entitled to treat the registered holder of any share as the absolute owner thereof and accordingly shall not be bound to recognise any equitable or other claim to, or interest in, such share on the part of any other person." Ex. 46, Art. 8 at 7 (Sentry); Declaration of David J. Molton ("Molton Decl."), Ex. 1, Art. 8 at 7 (Sigma).

By executing the Subscription Agreements in its own name (*see* Ex. 3 at -647, -667), HSSL became a registered holder (*see* Ex. 3 ¶ 2 at -647; Ex. 3 ¶ 14 at -655), thereby expressly agreeing to be bound by the Articles, including Article 8. *See* Ex. 3 ¶¶ 1, 2 at -647 (agreement to be bound

---

diligence), nor should the Court credit Coe's flimsy attempt to provide "context" on numerous documents Coe was not even copied on. *See* Coe Decl. ¶¶ 8-11, pp. 11-18.

6

by Fund Documents, including PPM and Articles).[7] And while BVI law merits issues are beyond the scope of this motion, the Privy Council has applied the principle reflected in Article 8. *Skandinaviska Enskilda Banken AB (Publ) v. Conway*, [2019] UKPC 36 ¶ 88, available at https://www.jcpc.uk/cases/docs/jcpc-2017-0022-judgment.pdf (rejecting argument shareholder was merely acting for beneficial owners, where articles entitled company to deal with registered shareholders as legal owner).

Having agreed to be treated as owner of shares in a Madoff feeder fund, HSSL cannot now express surprise at such investment being a relevant jurisdictional contact for HSSL itself. *See* Opp. at 8-9, 15-19.

Nothing HSSL offers on reply changes that outcome. *First*, because HSSL concedes it received the PPMs (*see* Reply at 3; Quintus Decl. (Dkt. 281) ¶ 25) and because it indisputably signed Subscription Agreements binding it to the Articles and PPMs (*see* Exs. 3-4), HSSL's newfound professions of ignorance regarding the contract documents (*see* Reply at 3), are without legal effect. *See Consolidated Edison Co. of New York v. U.S.*, 221 F.3d 364, 371 (2d Cir. 2000) ("[A] person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms."); *AXA Versicherung AG v. New Hampshire Ins. Co.*, 391 F. App'x 25, 30 (2d Cir. 2010)); *Caloric Stove Corp. v. Chemical Bank & Trust Co.*, 205 F.2d 492, 495 (2d Cir. 1953) (L.Hand, J.) ("[I]f a party to a written contract signs it, he is bound by its terms, whatever these may be, even if he has not read it."). Indeed, HSSL by contract confirmed it "received and read a copy of the [PPM]" and that, in subscribing for shares, it relied upon the information in the Fund Documents (*i.e.*, PPM and Articles). Ex. 3 at -653 ¶ 7; Ex. 4 at -207 ¶ 7.

---

[7] ████████████████████████████████████████ Quintus Decl. (Dkt. 281) ¶ 20(b).

7

*Second*, because HSSL cannot dispute knowing the Funds were Madoff feeder funds, its bizarre new protestations that HSSL is a separate corporate entity from the Funds and that HSSL cannot exert corporate control over the Funds' investments (*see* Reply at 3, 8-9), miss the point entirely.[8]  It is not the Liquidators' theory of jurisdiction that HSSL could command the Funds to change their investment policies mid-stream and newly select BLMIS.  Rather, the Liquidators argue HSSL chose to invest in the Funds *in the first place* knowing the Funds were Madoff feeder funds and thus HSSL's investments would necessarily be indirect investments in BLMIS in New York.  Specific jurisdiction does not require more.  See Opp. at 15-19.[9]

*Third*, HSSL's contention that it may not have been HSSL's "own money" that made its way into BLMIS, *see* Reply at 3, 8-9, is likewise irrelevant.  Jurisdiction here does not require *direct* investment into BLMIS or tracing of funds into BLMIS; instead, investment indirectly through Madoff feeder funds, as HSSL accomplished here, is sufficient.  See Opp. at 15-17 (citing *Picard v. Bureau of Labor Ins.* (*SIPC v. Bernard L. Madoff Inv. Secs. LLC*) ("*BLI*"), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012); *Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv.*

---

[8] Simon Mortimore KC, HSSL's BVI law expert, also declares that "a BVI company's constructive trust claim in respect of property transferred before the commencement of its liquidation is an asset or alleged asset in the liquidation, which the liquidators may try to realize by bringing proceedings in the name and on behalf of the company, but not in his own name." Mortimore Decl. (Dkt. 279), ¶ 9(6). While that assertion is not referenced in the Reply, the Complaint makes clear the constructive trust claims are being pursued by Sentry and Sigma, acting by their duly authorized representatives, the Liquidators. Dkt. 167 at ¶ 180.

[9] HSSL's reliance on cases analyzing general jurisdiction (*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) and piercing the corporate veil (*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-21 (2d Cir. 1984) (*see* Reply at 9) have no application to this case. These cases stand for the proposition that the presence of a subsidiary in the jurisdiction does not, in itself, establish a foreign parent's presence in the state for purposes of general jurisdiction (*i.e.* to hold the foreign parent responsible for causes of action unrelated to the defendant's New York activities).  These cases do not speak to the issue here, which is whether the Court has specific jurisdiction over HSSL due to HSSL's contacts with New York.

8

*Secs. LLC*), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014); *Maxam Absolute Return Fund, L.P.*, 460 B.R. at 118; *cf. In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Secs. LLC*, 917 F.3d 85, 105 (2d Cir. 2019); *Picard v. Cathay Life Ins. Co. (In re Bernard L. Madoff)*, 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022); *Picard v. Barfield Nominees Ltd. (In re Bernard L. Madoff)*, 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022)).

*Fourth*, while the Court need not reach the issue given HSSL's agreement to be treated as "absolute owner," even on its own terms HSSL's contention that it was merely executing trades for customers without discretion (*see* Reply at 2-3, 7-8), flounders upon review of the documents. The Custodian Agreements between HSSL and its clients ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███ Quintus Decl., Ex. 1 ¶ 17.

## **CONCLUSION**

For the reasons set forth above and those in the Liquidators' Opposition, this Court should deny HSSL's motion.

9

| | |
|---|---|
| Date: June 30, 2023 | Respectfully submitted,<br><br>BROWN RUDNICK LLP<br><br>*/s/ David J. Molton*<br>David J. Molton<br>Marek P. Krzyzowski<br>Seven Times Square<br>New York, NY 10036<br>Telephone: 212-209-4800<br>dmolton@brownrudnick.com<br>mkrzyzowski@brownrudnick.com<br><br>*Attorneys for the Plaintiffs Joint Liquidators* |